IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI`I, )<br><br>Plaintiff, )<br><br>vs. )<br><br>C.B., by and though his Parents, DONNA and SCOTT B., )<br><br>Defendants. ) | CIVIL NO. 11-00576 SOM/RLP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I.      INTRODUCTION.

This is an appeal from a decision by an Administrative Hearings Officer ("AHO").  The AHO determined that Defendant C.B., a minor, had been denied a Free Appropriate Public Education ("FAPE"), as required by the Individuals with Disabilities Education Act ("IDEA").  The AHO ordered Plaintiff Department of Education ("DOE") of the State of Hawaii to reimburse the child and his parents, Donna and Scott B. ("Parents"), for services at Autism Management Services ("AMS"), the private facility that the child now attends.  The DOE seeks a preliminary injunction barring enforcement of the AHO's decision, which included findings of fact and conclusions of law ("Decision").  Only one element of the four-factor preliminary injunction test, the "likelihood of success on the merits"

factor, weighs in favor of granting the injunction.  The other factors do not.  The court therefore denies the DOE's motion.

II.        STATUTORY FRAMEWORK.

        "The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education."  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)).  The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A). To provide a Free Appropriate Public Education ("FAPE") in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an Individualized Education Program ("IEP"), and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

        The student's FAPE must be "tailored to the unique needs of the handicapped child" through an IEP.  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982) (citing 20 U.S.C. § 1401(18)).  The IEP is prepared at a meeting among a qualified representative of the local educational

agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child.  34 C.F.R. § 222.50; see also 20 U.S.C. § 1414(d).  Local or regional educational agencies must review, and, when appropriate, revise each child's IEP at least annually.  20 U.S.C. § 1414(d)(4).

When a parent disagrees with the contents of an IEP, the parent may challenge that IEP by demanding an administrative due process hearing.  See 20 U.S.C. § 1415(b)(6), (f)(1)(A).  A parent may also enroll the child in a private program, and, upon establishing that the public school failed to provide a FAPE, the parent may seek reimbursement.  See 20 U.S.C. § 1412 (a)(10)(C)(ii); Sch. Comm. of Burlington v. Dep't. of Educ. of Mass., 471 U.S. 359, 370 (1985).  To be awarded reimbursement, a parent must establish that placement at a private school was appropriate.  Id.

III.     FACTUAL AND PROCEDURAL BACKGROUND.

C.B. is a five-year-old boy with autism.  Decision ¶ 1. He has received special education since 2009.  Id. ¶ 4.  C.B. is now enrolled at AMS, a private program for children with autism, where he has been since May 2011.  Id. ¶ 45.  C.B. previously attended Horizons Academy, a private school.  Id. ¶ 18.  Unhappy with C.B.'s progress at his home public school, Kamali'i Elementary School on the island of Maui, Parents had unilaterally placed C.B. at Horizons in September 2010.  Id. ¶ 16.

Disputes about the one-to-one paraprofessional services provided by the DOE are prominent in the present case.  An IEP dated June 18, 2009, required the DOE to provide twenty-nine hours per week of daily one-to-one paraprofessional services by a DOE-contracted provider.  Id. ¶ 5.  Another IEP was prepared for C.B. on May 28, 2010.  Id. ¶ 6.  The May 2010 IEP replaced the contracted provider with a DOE employee and required that the paraprofessional have certain credentials.  Id. ¶ 6-7.  Not satisfied with the new DOE paraprofessional and allegedly seeing C.B.'s behavior regress, Parents moved C.B. to Horizons.  Id. ¶¶ 8-15.

On October 28, 2010, the DOE held an IEP meeting that resulted in the IEP in issue before this court.  Id. ¶ 22. C.B.'s father wanted the IEP to include services designed to ease C.B.'s transition back to Kamali`i.  Id. ¶ 24.  Parents also requested that the IEP require the one-to-one paraprofessional to have certain credentials required by the IEP of May 24, 2010. Id. ¶ 28.   The DOE refused on the ground that doing so would limit which individuals could work with C.B.  Id. ¶ 28.  The October 2010 IEP ultimately stated only that C.B. would receive daily one-to-one paraprofessional support.  Id. ¶ 30.

Parents requested a due process hearing on April 26, 2011.  The AHO convened a hearing on July 18, 2011, and issued her decision on August 30, 2011.  The AHO made numerous factual

findings and concluded that the DOE had violated the IDEA (1) by not discussing or developing a transition plan, and (2) by failing to provide Parents with information they requested about the paraprofessional services. Decision at 17-18. She concluded that C.B. had been denied a FAPE.

The AHO then concluded that, under <u>Burlington</u>, 471 U.S. 359, Defendants were entitled to reimbursement because C.B.'s placement at AMS had been appropriate. <u>Id.</u> at 21. She ordered the DOE to reimburse Defendants for the cost of C.B.'s tuition at AMS until the DOE had developed an appropriate IEP for C.B. <u>Id.</u> The DOE contends that an appropriate IEP was developed on May 20, 2011. In the present appeal, the DOE challenges the AHO's Decision on various grounds and seeks a preliminary injunction to prevent its enforcement.

IV.    <u>PRELIMINARY INJUNCTION STANDARD.</u>

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. <u>Univ. of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in

his favor, and [4] that an injunction is in the public interest."
Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)
(citations omitted).  Winter makes it clear that a preliminary
injunction may not issue when a plaintiff who demonstrates a
strong likelihood of prevailing on the merits shows only a
possibility of irreparable harm.  Small v. Avanti Health Systems,
LLC, 661 F.3d 1180, 1187 (9th Cir. 2011) (citing Winter, 555 U.S.
at 22).

          The Supreme Court has cautioned that a "preliminary
injunction is an extraordinary remedy never awarded as of right."
Winter, 555 U.S. at 24 (2008) (citing Munaf v. Geren, 553 U.S.
674, 689-90 (2008)).  Courts balance the competing claims of
injury and consider the effect on each party of granting or
denying the injunction.  A court is not to grant a preliminary
injunction "unless the movant, by a *clear showing,* carries the
burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972
(1997) (quotations and citations omitted) (emphasis in original).

V.        ANALYSIS.

          The DOE does not establish two of the four preliminary
injunction factors.  It does not show that it will suffer
irreparable harm, or that the balance of equities tips in its
favor.  The DOE does show that it is likely to succeed on the
merits.  The public interest factor is neutral.  Balancing the

four factors, the court concludes that a preliminary injunction is not warranted in this case.

A.   <u>Irreparable Harm.</u>

Because, in this court's view, irreparable harm is the most problematic factor for the DOE, this court begins by discussing that factor.  The DOE argues that it is likely to suffer irreparable harm absent a preliminary injunction because it will have to reimburse Parents $13,500 per month for C.B.'s tuition at AMS.  The DOE reads the AHO's Decision as directing the DOE to reimburse Parents for C.B.'s tuition for a month and a half at AMS.  If this reading is correct, the amount in issue is between $20,000 to $25,000.

The DOE's first hurdle in establishing irreparable harm is that the only identified harm is monetary.  Monetary harm is typically not irreparable because it usually can later be remedied by a damage award.  <u>E.g.</u>, <u>Cal. Pharmacists Assoc. v. Maxwell-Jolly</u>, 563 F.3d 847, 851 (9th Cir. 2009).  The DOE contends, however, that its monetary harm is irreparable because the IDEA precludes a school district from recovering money paid to reimburse parents pursuant to an administrative decision, even if the school district prevails on appeal.

The proposition that a public entity cannot recover from parents under the IDEA is, in fact, not something this court can find stated in any controlling authority.  The DOE,

recognizing that this argument could hurt it when it is not seeking to establish irreparable harm, was nonetheless adamant at the hearing before this court that it is barred as a matter of law from recovering tuition payments from parents if it prevails on this appeal. The firmness of the DOE's position is surprising in light of the DOE's failure to point to any statutory provision addressing this issue or to any case clearly stating this. In making this argument in aid of obtaining an injunction, the DOE cites Maxwell-Jolly, in which the Ninth Circuit said that monetary harm may be deemed irreparable when a claimant cannot recover money damages because the claimant is suing a state, which cannot be ordered to pay money damages given the Eleventh Amendment. Id. at 852. The DOE also cites two cases from the Tenth Circuit holding that a plaintiff establishes irreparable harm when it cannot recover money damages from the defendants. In Chamber of Commerce of the United States v. Edmondson, 594 F.3d 742, 770-71 (10th Cir. 2010), the Tenth Circuit was considering Eleventh Amendment immunity, while in Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1157-58 (10th Cir. 2011), the Tenth Circuit was considering an Indian tribe's sovereign immunity.

        These cases cited by the DOE concern irreparable harm when a claimant is barred from recovering money damages by sovereign immunity. That is not the situation here. In the

8

present case, it is the party protected by sovereign immunity that is saying it will be irreparably harmed because it cannot collect money damages from individuals who have no sovereign immunity.  If Parents cannot be made to reimburse the DOE if the DOE prevails on appeal, that protection must flow from a source other than sovereign immunity.  It makes no sense to this court to say the DOE will be irreparably harmed because the DOE's Eleventh Amendment immunity would preclude Parents from recovering from the DOE.

The court is not here saying that the DOE may, as a matter of law, recover tuition from Parents.  The court is unaware of whether such recovery has ever been ordered and acknowledges that some courts have barred recovery.  See, e.g., Jenkins v. Squillacote, 935 F.2d 303, 307 n.3 (D.C. Cir. 1991) ("It would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child"); E.Z.-L. ex rel. R.L. v. New York City Dep't. of Educ., 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (noting the absence of "any case in which parents were directed to reimburse a school district for payments that the school district made to the parents [pursuant to the stay-put provision] while their IEP challenge was pending")).  Those decisions, however, are not controlling here.  Moreover, the absence of examples of recovery from parents may sometimes flow

from practical rather than legal considerations.  The inability of parents to pay may make recovery efforts futile, or a school district may even refrain from seeking recovery so as to avoid a political backlash or an appearance to the public of being insensitive or overbearing.  The DOE has the burden of showing that it will suffer irreparable harm absent a preliminary injunction.  The DOE, providing neither facts nor controlling law, does not meet this burden.

Quite apart from the inapplicability of the law the DOE cites, the DOE cites no facts indicating that it will be irreparably harmed.  If the DOE indeed may recover its tuition payments as a matter of law, it must still, to show irreparable harm, show that it cannot recover as a matter of fact.  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough [to establish irreparable harm].  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974) (alteration in original)).

In San Francisco v. S.W., 2011 WL 577413, *2 (N.D. Cal. Feb. 9. 2011), the United States District Court for the Northern

District of California concluded that a school district seeking to stay an administrative decision requiring it to pay a student's tuition failed to establish irreparable harm when it argued that it would likely be unable to get money back from the parents.[1]  Citing Los Angeles Memorial Coliseum Commission, the district court held that this harm fell short of establishing the likelihood of irreparable harm necessary because the school district was only speculating that it could not recover the tuition back from the parents.  Id.

In the present case, the DOE similarly provides nothing more than supposition that, if it ultimately prevails in this action, it can never recover from the parents the payments it advances.  Even if Parents cannot presently pay AMS's fees, there is no evidence that they will be unable to pay in the future.

Finally, if the DOE is only required to reimburse Defendants the cost of C.B.'s expenses for a month and a half, this court fails to see why that constitutes irreparable harm. In an analogous case, the United States District Court for the District of New Jersey did not find irreparable harm when a

---

[1]  That case involved a motion to stay.  A party seeking a stay must establish the same four factors as a party seeking a preliminary injunction.  Humane Soc. of the United States v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009) ("A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." (citations omitted)).

school board sought to stay an administrative decision directing the school board to pay a students' tuition under the Rehabilitation Act, 29 U.S.C. § 794.  <u>Borough of Palmyra, Board of Educ. v. F.C.,</u> 2 F. Supp. 2d 637, 644 (D.N.J. 1998).  The court in that case was not persuaded by the school board's arguments that, first, the monetary loss was irreparable given its lack of authority to raise taxes to offset the costs of private school tuition, and, second, dipping into its budget surplus would be a fiscally unsound way to ameliorate the situation.  <u>Id.</u>  The court noted that the reimbursement was equivalent to only three percent of the budget surplus.  <u>Id.</u> While the DOE says that $25,000 is a significant amount, it is not great enough to qualify as irreparable harm that justifies a preliminary injunction.

B.   <u>Balance of Equities.</u>

The balance of equities also tips in Defendants' favor. The DOE asserts that the balance of equities tips in its favor because it seeks only to suspend any reimbursement obligation, not to remove C.B. from AMS.  Defendants respond that AMS will not enroll C.B. if the court grants the preliminary injunction because Parents cannot presently fund C.B.'s AMS program. Forcing C.B. out of his current placement before the merits of this case are decided runs the risk of harming C.B.

The Ninth Circuit has stated that Congress recognized a "heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting." Joshua A. v. Rocklin United Sch. Dist., 559 F.3d 1039, 1040 (9th Cir. 2009).  In Sesquenita School District v. Raelee, 96 F.3d 78, 79 (3d Cir. 1996), the Third Circuit affirmed the denial of a stay of an administrative appeals panel decision directing a school district to reimburse parents for their child's tuition at a private school under the stay-put provision.[2]  While the Ninth Circuit and the Third Circuit statements came in the context of stay-put discussions, it is not clear why removal caused by an injunction would affect a child differently.

In the present case, even if this court ultimately decides that AMS is not an appropriate placement, forcing C.B. out of his current placement before the merits of this case are decided poses risks that outweigh the financial harm to the DOE.

---

[2]  With respect to the irreparable harm prong, the district court had found that "the district would not be entitled to recover [the reimbursement] funds . . . even if it were to prevail on appeal." Susquenita, 96 F.3d at 81.  Even after concluding this, the district court did not find the prospect of harm sufficient to justify granting a stay.  Id.  The court stated, "Taken together, we find that the relevant considerations do not justify granting the stay requested by the district."  Id. On appeal, the Third Circuit only addressed where the student should attend school while the appeal proceeded, who should pay for that placement, and when the payment had to be made.  Id. The Third Circuit did not address the district court's conclusion regarding irreparable harm or the balance of equities.

13

As the United States District Court for the District of New Mexico noted, "[W]hatever threat of irreparable financial harm [the school district] may suffer as a result of its present obligation to reimburse the [parents] is outweighed by the much greater and more irreparable threat of harm to the child, who benefits from the relief awarded by the [administrative] decision." <u>Bd. of Educ. of Alburquerque Public Schs. v. Miller</u>, 2005 WL 6168485, at *6 (D.N.M. July 22, 2005).

   C. <u>Likelihood of Success on the Merits.</u>

   The DOE argues that it is likely to succeed on the merits of its appeal because the AHO erred by (1) considering matters not raised in C.B.'s due process hearing request; (2) deeming Parents to have raised concerns about the term "daily" at the IEP meeting on October 28, 2010, and concluding that "daily" insufficiently described the frequency of C.B.'s one-to-one paraprofessional services; (3) ruling that the IEP team was required to discuss a transition plan; and (4) concluding that AMS was an appropriate placement.

   Under the IDEA, when evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c).

14

A district court reviews the hearings officer's conclusions <u>de novo</u>. <u>Ashland Sch. Dist. v. Parents of Student E.H.</u>, 587 F.3d 1175, 1182 (9th Cir. 2009).  However, <u>de novo</u> under the IDEA "carries with it the implied requirement that due weight shall be given to [the administrative] proceedings." <u>Id.</u> (quoting <u>Rowley</u>, 458 U.S. at 206).  A district court "must give deference to the state hearing officer's findings, . . . and avoid substituting its own notions of sound educational policy for those of the school authorities which it reviews." <u>Id.</u> (internal quotation marks, modifications, and citations omitted).  A court must consider the findings carefully and respond to the hearings officer's resolution of each material issue.  <u>Capistrano Unified Sch. Dist. v. Warternberg</u>, 59 F.3d 884, 891 (9th Cir. 1995).  The court, however, is free to accept the findings in part or in whole.  <u>Id.</u>  Greater deference is appropriate when the findings are "thorough and careful." <u>JG v. Douglas  Sch. Dist.</u>, 552 F.3d 786, 793 (9th Cir. 2008).

With this standard of review in mind, the court rules that the DOE is likely to succeed on the merits of its appeal.

> 1.   Matters Not Raised in the Due Process Hearing
>      Request.

The DOE argues that the AHO improperly considered issues that Defendants did not raise in their due process hearing request.  Section 1415(f)(3)(B) of the United States Code limits the subject matter of an impartial due process hearing held

pursuant to the IDEA to issues that were raised in the due

process complaint: "The party requesting the due process hearing

shall not be allowed to raise issues at the due process hearing

that were not raised in the notice filed under subsection (b)(7),

unless the other party agrees otherwise."   20 U.S.C.

§ 1415(f)(3)(B).   <u>See also</u> <u>Cnty. of San Diego v. Cal. Special</u>

<u>Educ. Hearing Office</u>, 93 F.3d 1458, 1465 (9th Cir. 1996) (The

scope of the administrative hearing . . . is limited to the

'complaint' raised to obtain the hearing."); <u>James M. v. Hawaii,</u>

<u>Dep't. of Educ.</u>, Civ. No. 10-00369 LEK, 2011 WL 1750718, at *12

(D. Haw. Feb. 25, 2011) ("The Ninth Circuit has also held that

review in IDEA cases is specifically limited to the issues raised

in the administrative complaint." (citing <u>Cnty. of San Diego</u>, 93

F.3d at 1465)).

          Defendants identified two issues they wanted considered

at an impartial due process hearing.   Specifically, Parents

complained (1) that the IEP had failed to address C.B.'s unique

need for "a process and/or services to provide for his transfer"

from Horizons to a public school, and (2) that, in using the word

"daily," a word Parents said was "open to interpretation," the

IEP had failed to state the frequency of "one to one professional

support."   Memo. in Supp. of Mot. for Prelim. Inj. to Stay

Enforcement of Administrative Hearing Officer's Findings of Fact,

Conclusions of Law and Decision, Filed Aug. 30, 2011 ("Motion")

Ex. B ("Complaint"), at 3, Nov. 3, 2011, ECF No. 8.  The DOE takes issue with the AHO's resolution of the second issue.

The DOE asserts that the AHO expanded the second issue beyond the frequency of services and considered whether the IEP team had refused to allow Parents to discuss the qualifications of the paraprofessional at the IEP meeting and the substance of C.B.'s paraprofessional services.  The DOE contends that it did not agree to allow Parents to raise those substantive complaints at the administrative hearing.

At the administrative hearing, the AHO not only received testimony about the substance of the paraprofessional services and the qualifications of the paraprofessional, she based her ruling at least in part on that evidence.  For example, responding to questioning from Defendants' counsel, C.B.'s father testified that Parents had asked the IEP team to write the paraprofessional's credentials into the IEP.  Transcript of Proceedings ("Transcript") at 27:11-25.  In her Decision, the AHO stated that "the substance of Student's paraprofessional services--the credentials and/or qualifications of the individual providing these services; the consistency of the 1:1 services provided to Student; and the amount of services Student would receive during the day--was a major concern for Parents."  Decision at 18.  She found that Parents had requested information about the paraprofessional services, such as information

pertaining to the frequency of the services, as well as the

credentials of the professional, but that this information was

not provided to Parents.   Id.   She ultimately concluded:

> The fact that Student's paraprofessional
> services would be provided to him "daily" or
> "throughout the day", combined with the lack
> of this information provided to Parent[s] in
> this case, especially in light of Student's
> previous problems with paraprofessional
> services and regression at the Home School,
> is a procedural violation of the IDEA.   The
> October 28, 2010 IEP stated the reasons that
> Student required paraprofessional services,
> but did not state, nor was it fully
> contemplated or discussed at the IEP meeting,
> what the substance of Student's
> paraprofessional services would be.

Id. at 19.

The AHO appears to have held that the DOE had

procedurally violated the IDEA by refusing to provide Parents

with information about both the frequency of services and the

substance of the services, including the credentials and the

qualifications of the paraprofessional.   Defendants' due process

complaint, however, raised only the frequency of the

paraprofessional services, not the substance of the services.   It

is unclear whether the AHO would have determined that the DOE had

violated the IDEA if her conclusion had been limited to the issue

of the frequency of the paraprofessional services.   What is clear

is that she should not have made any ruling regarding the

substance of those services.   The DOE is thus likely to succeed

on the merits on this issue.

2.   The AHO's Conclusion Regarding the Term
"Daily."

The DOE takes issue with the AHO's conclusion regarding
the term "daily."  First, the DOE argues that the term "daily"
was never an issue for Parents at the October 28, 2010, IEP
meeting.  The DOE says that the AHO erred by failing to consider
evidence that Parents had not raised the quantity of the
paraprofessional services at the October 28, 2010, meeting, and
had not complained at all about the term "daily" at that meeting.

The court is not persuaded by the DOE on this point.
Although Parents did not specifically complain about the term
"daily" at the October 2010 IEP meeting, C.B.'s father testified
at the administrative hearing that Parents questioned how often
the paraprofessional would work with C.B. throughout the day and
whether the paraprofessional would be working exclusively with
C.B.  Transcripts 28:6 - 29:3.  These questions concern the
quantity of paraprofessional services.  Parents did not have to
point to the term "daily" at the IEP meeting to raise the
quantity of services as an issue.

The AHO's Decision does not expressly conclude that the
term "daily" was on its own fatally vague.  However, the AHO's
conclusion that the DOE did not provide Parents with sufficient
information about Student's paraprofessional services, Decision
at 19, appears to have relied, at least in part, on the substance
of the services, a matter beyond the scope of the issues

19

identified on appeal by Parents.  Without ruling here that the word "daily" is an insufficient designation of the amount of services, this court finds that the impact of an impermissibly considered issue on the AHO's conclusion makes it likely the DOE will succeed on the merits to the extent it is challenging the AHO's conclusion that Parents were not provided with sufficient information about the paraprofessional services.

3.   <u>Transition Plan.</u>

The DOE contends that the AHO erred in concluding that the DOE was required to discuss a transition plan at the October 28, 2010, IEP meeting.  The AHO concluded:

> Though the IDEA does not require an IEP [to] contain a transition plan, it does require the Team to discuss and develop an educational plan that addresses each of the child's unique needs and any appropriate support services to allow the child to take advantage of educational opportunities.  A transition plan or process between Student's non-DOE placement and the Home School is a unique need of Student and a support service that allows Student to take advantage of the educational opportunities in his IEP.

Decision at 18.  She concluded that the DOE had procedurally violated the IDEA by "not discussing Parents' concerns about Student's transition needs at the meeting, by not including a transition plan and/or by not addressing Student's needs for transition in the IEP goals and/or objectives."  <u>Id.</u>

This court has previously held that the DOE is not required to include a transition plan in an IEP whenever a child

20

moves from a private institution to a public school.   <u>L.I. v.</u>
<u>Hawaii, Dep't. of Educ.</u>, Civil No. 10-00731 SOM/BMK, 2011 WL
6002623, at *6 (D. Haw. Nov. 30, 2011).[3]  Various requirements

---

[3]   The court also noted in <u>M.N. v. Hawaii, Dep't. of Educ</u>,
Civil No. 11-00121 SOM/BMK, 2011 WL 6020861, at *4 n.1 (D. Haw.
Dec. 1, 2011):

> Because it is not an issue raised on
> appeal, this court does not address the
> merits of the AHO's conclusion that the DOE
> denied A.B. a FAPE by failing to adequately
> address his transitional needs. As this court
> ruled in <u>L.I. v. Hawaii, Dep't. of Educ.</u>,
> Civ. No. 10-00731 SOM/BMK, which involved a
> child over the age of sixteen, the
> requirement in the IDEA that an IEP include
> transition services does not apply when a
> child is moving from a private placement to a
> public school.  While A.B. is much younger,
> the court is unaware of any IDEA provision
> requiring that his IEP include transition
> services.  Indeed, the AHO stated that he
> agreed with the DOE "that the IDEA does not
> mandate inclusion of a transition plan in an
> IEP."  AR at 165.  The AHO continued,
> "However, the IDEA does mandate that
> Student's needs must be addressed."  <u>Id.</u>; <u>see</u>
> <u>also</u> <u>id.</u> at 167 ("while the Hearings Officer
> is aware that the IDEA does not mandate that
> a transition plan needs to be a part of a
> student's IEP, Student's transitional needs
> must still be addressed").

> The AHO appears to have been saying
> that, while the IDEA does not require the
> inclusion of a transition plan in an IEP, the
> requirement that a student's needs be met
> includes transitional needs.  No citation to
> any authority is provided by the AHO on this
> point.  The failure of the IEP to address
> transitional needs was the sole basis for the
> AHO's conclusion that a FAPE was not offered.
> <u>Id.</u> at 170.  This court questions without
> deciding whether the AHO could impose a legal

for an IEP, such as a statement of the child's present level of achievement and measurable goals, are listed in 20 U.S.C. § 1414(d)(A)(i).  Nowhere is there a requirement that an IEP include a transition plan when a child moves from a private facility to a public school.  The IDEA explicitly prohibits construing § 1414 to require "that additional information be included in a child's IEP beyond what is explicitly required in this section."  20 U.S.C. § 1414(d)(1)(A)(ii).

The IDEA does provide that an IEP must include transition services for a child age sixteen and above to assist the child in reaching "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills[.]"  20 U.S.C § 1414(d)(1)(A)(i)(VIII).  However, transition services must be included in an IEP only in certain circumstances, such as when a child is moving from school to post-school activities, to post-secondary activities, or to vocational training.  "[T]he statutory provision of the IDEA specifically addressing transition services does not mandate such services when a transition from private to public school takes place."  James M., 2011 WL 1750718, at *11 (quoting B.B. v. Hawaii, Dep't. of Educ., 483 F. Supp. 2d 1042, 1056 (D. Haw.

---

requirement (such as the inclusion of a transition plan in an IEP) that the IDEA itself clearly does not require.

2006) (citing L.M. v. Hawaii, Dep't. of Educ., Civil No. 05*00345 ACK/KSC, 2006 WL 2331031, at *16 (D. Haw. Aug. 9, 2006))).

The transition plan Parents sought in connection with C.B.'s move from Horizons back to a public school was something the DOE was not obligated to include. See James M., 2011 WL 1750718, at *11 ("Given that James M. was to be moved from Loveland, a private school, to Kahuku, a public school, the School District was under no obligation to provide transition services for James M."). The AHO appears to have concluded that, if transition services could be viewed as one of C.B.'s "unique needs," the DOE's failure to include a transition plan in the IEP constituted a failure to provide a FAPE. The AHO cited no authority in support of this conclusion. Absent authority requiring that an IEP include a transition plan, the court is not likely to rule that the DOE was required to include a transition plan in C.B.'s IEP or to discuss a transition plan at the meeting called to develop an IEP. The court is concerned that imposing such a requirement to address a "unique need" would be an end run around the bar to construing § 1414 as requiring that an IEP include information not expressly required by law.

The court stresses that its intent is not to diminish the need for transition services, which may indeed be highly important. The court is instead concerned about limiting violations of the IDEA to the terms of the IDEA itself. Not every denial of services constitutes a denial of a FAPE, and a

transition plan is not required by any statutory provision to be included in an IEP.

4.   Whether AMS Is an Appropriate Placement.

The DOE is also likely to succeed on the merits of its argument that the AHO erred in treating AMS as an appropriate placement for C.B.  The AHO stated, "AMS is an appropriate program for Student."  Decision at 21.  However, what the IDEA provides if a FAPE has not been offered is reimbursement not of every "appropriate program" but of the cost of an appropriate private elementary school.  20 U.S.C. § 1412(10)(c)(ii).  The AHO did not determine that AMS is a private elementary school.

The AHO did describe in detail C.B.'s program at AMS and did summarize various reports that AMS and its affiliate, Center for Autism Related Disorders ("CARD"), prepared for C.B. See Decision ¶¶ 33-44.  The AHO found that C.B. "made daily growth at AMS," id. ¶ 47, but did not address whether the growth was in educational areas.

Even if AMS is a private elementary school, parents must demonstrate "that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." C.B. ex rel. Baquizero v. Garden Grove Unified Sch. Dist., 635 F.3d 1155, 1159 (9th Cir. 2011).  The private placement need not provide an education that meets the IDEA's definition of a FAPE, Florence

24

Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 13 (1993), and
"parents need not show that a private placement furnishes every
special service necessary to maximize their child's potential."
Baquerizo, 635 F.3d. at 1159.  The private school, however,
cannot have provided the child with "no educational benefit."
See W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23,
960 F.2d 1479, 1487 (9th Cir. 1992), superseded by statute on
other grounds, Individuals with Disability Education Act
Amendments of 1997, Pub. L. 105-17, § 614(d)(1)(B), 111 Stat. 37.

　　　　The DOE complains that, in finding that C.B. had shown
growth at AMS, the AHO relied almost entirely on C.B.'s father's
testimony that C.B. had benefitted since attending AMS.  In
paragraphs 46 through 51 of the Decision, the AHO recounted
C.B.'s father's testimony explaining the progress C.B. had made
since attending AMS, such as improved behavior and communication
skills.  C.B.'s mother "confirmed" that C.B.'s communication had
improved.  Decision ¶ 52.  The DOE contends that there is no
testimony from anyone at AMS or CARDS regarding the program.  The
DOE also argues that the documentary evidence in the record--an
evaluation report and an "asking for information" handout from
AMS, as well as a behavioral intervention plan and a workshop
summary from CARDS--do not show that C.B. in fact made any
progress at AMS.  See Motion Ex. F.

　　　　This court does not fault the AHO for relying on
Parents' testimony, which the AHO may have found credible.  The

court's concern is rather that nothing the AHO cites establishes that AMS is a private elementary school, as opposed to, for example, a treatment program.  The two are not necessarily mutually exclusive, but the AHO had to start by determining whether AMS was a school.  The AHO did not do this.

The court therefore agrees with the DOE that the AHO's factual findings are likely insufficient to sustain the conclusion that AMS was an appropriate placement.

As the DOE is likely to succeed on the merits on this issue, as well as the preceding issues, this factor weighs in favor of the DOE.

D.   Public Interest.

Finally, the public interest factor is neutral.  This case involves competing public interests.  The DOE contends that an injunction is in the public interest because "the public does not benefit from having its taxpayer dollars spent frivolously on inappropriate private placements." Motion at 35.  The public interest is also served by the orderly enforcement of administrative orders purporting to ensure the state's compliance with the IDEA.  See Borough of Palmyra, 2 F. Supp. at 645.  See also Susquenita, 96 F.3d at 86 ("While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position.").  Balancing the public interest in not

26

allowing the state to bypass an administrative ruling that has not been overturned by a court against the public interest in avoiding expenditures pursuant to an order likely to be vacated, the court finds this factor neutral.

VI.      <u>CONCLUSION.</u>

Balancing the four preliminary injunction factors, the court concludes that the DOE does not show that the extraordinary remedy of a preliminary injunction is warranted here.  The DOE's motion for a preliminary injunction is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 24, 2012.



<u>  /s/ Susan Oki Mollway  </u>
Susan Oki Mollway
Chief United States District Judge


<u>State of Hawaii, Dep't. of Educ. v. C.B.,</u>; Civil No. 11-00576 SOM/RLP; ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION