IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI`I, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 11-00576 SOM/RLP ORDER (1) DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS, AND (2) REMANDING STAY PUT ISSUES TO HEARINGS OFFICER IN CONNECTION WITH DEFENDANT'S COUNTER-MOTION FOR STAY-PUT RECOGNITION; EXHIBIT A |
| Plaintiff, |
| vs. |
| C.B., by and though his Parents, DONNA and SCOTT B., |
| Defendant. |

ORDER (1) DENYING IN PART PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS, AND (2) REMANDING
STAY PUT ISSUES TO HEARINGS OFFICER IN CONNECTION
WITH DEFENDANT'S COUNTER-MOTION FOR STAY-PUT RECOGNITION

I.      INTRODUCTION.

        This is an appeal from a decision by an Administrative

Hearings Officer ("AHO").  The AHO determined that Defendant

C.B., a minor, had been denied a Free Appropriate Public

Education ("FAPE"), as required by the Individuals with

Disabilities Education Act ("IDEA").  The AHO ordered Plaintiff

Department of Education ("DOE") of the State of Hawaii to

reimburse the child and his parents, Donna and Scott B.

("Parents"), for services at Autism Management Services ("AMS"),

the private facility that the child now attends.  The DOE appeals

that decision.

        Defendant, C.B., by and through and his parents, has

brought five counterclaims against the DOE.  The DOE now seeks to

dismiss those counterclaims on various grounds.  The court denies
the DOE's motion as moot with respect to Counterclaims 2, 3, 4,
and 5, as those claims have been voluntarily dismissed by C.B.
With respect to Counterclaim 1, which asserts that the DOE is
violating the stay put provision of the IDEA, 20 U.S.C.
§ 1415(j), the court stays the motion pending the remand set
forth in this order.  The court similarly stays C.B.'s motion,
which asks this court to order the DOE to fund C.B.'s placement
at AMS during the  pendency of appellate proceedings ("stay put
motion").

        Because the court is unable to determine whether the
AHO intended to change C.B.'s "current educational placement"
when she referred to AMS as an "appropriate program" for C.B. and
ordered reimbursement, the court remands this case to the AHO for
clarification on that limited issue.

II.        STATUTORY FRAMEWORK.

        "The IDEA is a comprehensive educational scheme,
conferring on disabled students a substantive right to public
education."  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298,
1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310
(1988)).  The IDEA ensures that "all children with disabilities
have available to them a free appropriate public education that
emphasizes special education and related services designed to
meet their unique needs and prepare them for further education,

employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).
To provide a FAPE in compliance with the IDEA, a state
educational agency receiving federal funds must evaluate a
student, determine whether that student is eligible for special
education and services, conduct and implement an Individualized
Education Program ("IEP"), and determine an appropriate
educational placement for the student.  20 U.S.C. § 1414.

　　　The student's FAPE must be "tailored to the unique
needs of the handicapped child" through an IEP.  <u>Bd. of Educ. of
Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 181
(1982) (citing 20 U.S.C. § 1401(18)).  The IEP is prepared at a
meeting among a qualified representative of the local educational
agency, the child's teacher, the child's parents or guardian,
and, when appropriate, the child.  34 C.F.R. § 222.50; <u>see also</u>
20 U.S.C. § 1414(d).  Local or regional educational agencies must
review, and, when appropriate, revise each child's IEP at least
annually.  20 U.S.C. § 1414(d)(4).

　　　When a parent disagrees with the contents of an IEP,
the parent may challenge that IEP by demanding an administrative
due process hearing.  <u>See</u> 20 U.S.C. § 1415(b)(6), (f)(1)(A).  A
parent may also enroll the child in a private program, and, upon
establishing that the public school failed to provide a FAPE, the
parent may seek reimbursement.
<u>See</u> 20 U.S.C. § 1412(a)(10)(C)(ii).  To be awarded reimbursement,

a parent must establish that placement at a private school was proper under the IDEA.  C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist., 653 F.3d 1155, 1159 (9th Cir. 2011) (quoting Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996)).

The IDEA also includes a "stay put" provision, which permits a child to stay in the child's current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint notice. See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d).

III.    FACTUAL AND PROCEDURAL BACKGROUND.

C.B. is a five-year-old boy with autism.  See Administrative Record on Appeal, Petitioners' Exhibits, at 1.  He has received special education since 2009.  Decision ¶ 4.  C.B. is now enrolled at AMS, a private program for children with autism, where he has been since May 2011.  Id. ¶ 45.

On October 28, 2010, the DOE held an IEP meeting that resulted in the IEP in issue before this court.  Id. ¶ 22. Parents disagreed with the content of that IEP and requested a due process hearing on April 26, 2011.  The AHO convened a hearing on July 18, 2011, and issued her decision on August 30, 2011.  The AHO made numerous factual findings and concluded that the DOE had violated the IDEA (1) by not discussing or developing a transition plan, and (2) by failing to provide Parents with

information they had requested about certain services that the DOE was to provide to C.B. Decision at 17-18. She concluded that C.B. had been denied a FAPE.

The AHO then concluded that, under <u>School Committee of Burlington v. Department of Education of Massachusetts</u>, 471 U.S. 359, 370 (1985) ("Burlington"), and <u>Seattle School District., No. 1 v. B.S.</u>, 82 F.3d 1493 (9th Cir. 1996), C.B.'s parents were entitled to reimbursement because C.B.'s placement at AMS had been appropriate. <u>Id.</u> at 21. She ordered the DOE to reimburse Parents for the cost of C.B.'s tuition at AMS until the DOE developed an appropriate IEP for C.B.[1] <u>Id.</u> The DOE contends that an appropriate IEP was developed on May 20, 2011. Parents, however, dispute whether that IEP is appropriate and have requested a due process hearing. <u>See</u> Reply Memo. in Supp. of Pl. Dept. of Educ.'s Mot. to Dismiss Defs.'s Counterclaims Ex. C., ECF No. 42-3.

On November 6, 2011, C.B. filed an answer to the DOE's Complaint and asserted five counterclaims: Count 1: "Violation Stay Put Injunction"; Count 2: "Violation of the Supremacy Clause"; Count 3: "Violation of the Supremacy Clause"; Count 4: "Preemption Under Federal Law"; Count 5: "IDEA and Section 504." Answer and Counterclaim, Nov. 06, 2011, ECF No. 10. The DOE now

---

[1] The DOE earlier sought a preliminary injunction to bar enforcement of the AHO's decision. On January 24, 2011, this court denied the DOE's motion.

5

seeks to dismiss the Counterclaims.  On December 22, 2011, C.B.
filed a stay put motion, seeking recognition that AMS is his
"current educational placement" under the stay put provision.[2]

IV.     ANALYSIS.

        A.    Counterclaims 2, 3, 4, and 5.

        On February 14, 2012, C.B. filed a "Notice of Partial
Dismissal" of Counterclaims 2 through 5.  The DOE argues that
C.B.'s "Notice of Partial Dismissal" does not comply with Rule
41(a)(1)(A) of the Federal Rules of Civil Procedure, and Local
Rule 41.1, as the DOE did not stipulate to dismiss those counts.

        Rule 41(a)(1)(A) permits a plaintiff to dismiss an
action without a court order by filing "(i) a notice of dismissal
before the opposing party serves either an answer or a motion for
summary judgment; or (ii) a stipulation of dismissal signed by
all parties who have appeared."  The DOE argues that, because it
filed a motion to dismiss the counterclaims before C.B. filed the
Notice of Dismissal, C.B. was required to obtain the DOE's
agreement and submit a stipulation.

        The court first notes that Rule 41(c) rather than Rule
41(a)(1)(A) is applicable here, as Rule 41(c) expressly pertains
to the dismissal of counterclaims.  It states, "This rule applies

---

[2]  Defendant filed the stay put motion as a "countermotion"
to the DOE's preliminary injunction motion.  The court declined
to consider the stay put motion as a "countermotion" in that
context, as it raised matters not raised in the DOE's preliminary
injunction motion.  See ECF No. 27.

to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made: (1) before a responsive pleading is served; or (2) if there is no responsive pleading, before evidence is introduced at a hearing or trial."

The DOE argues that it has already filed a responsive pleading by filing its motion to dismiss, and C.B. therefore may not voluntarily dismiss any of its counterclaims. The court disagrees. A motion to dismiss is not a responsive pleading. See Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) ("Rule 7(a) defines 'pleadings' as a complaint and answer; a reply to a counterclaim; an answer to a cross-claim; and a third party complaint and answer. Anything else is a motion or paper. . . . A motion to dismiss is not a pleading."). As Counterclaims 2, 3, 4, and 5 were properly voluntarily dismissed, the DOE's motion is moot with respect to those claims.[3]

B.    Counterclaim 1 and C.B.'s Stay Put Motion.

Counterclaim 1 asserts that C.B. "is entitled to the protections of the 'stay-put' provision requiring Plaintiff to continuously fund [C.B.'s attendance at AMS] during the pendency

---

[3] C.B.'s notice of dismissal states that he "believe[s] that Plaintiff would be estopped from using [Act 129] to deny responsibility for reimbursements to Defendants." The DOE interprets this as making a collateral estoppel argument. Given C.B.'s voluntary dismissal of Counterclaims 2, 3, 4, and 5, collateral estoppel is inapplicable.

of this appeal any appeal to the 9th Circuit Court of Appeals."
Counterclaim ¶ 10. C.B. alleges that the DOE has "affirmatively
denied to abide by this injunction." Id. The court construes
Counterclaim 1 as asserting that C.B. is violating the stay put
provision of the IDEA, 20 U.S.C. § 1415(j), by refusing to pay
for C.B.'s tuition at AMS. Thus, C.B.'s stay put motion
similarly argues that the DOE must continue to pay his tuition at
AMS pursuant to the stay put provision.

The stay put provision, bearing the title "Maintenance
of current educational placement," states:

> Except as provided in subsection (k)(4), during
> the pendency of any proceedings conducted
> pursuant to this section, unless the State or
> local educational agency and the parents
> otherwise agree, the child shall remain in the
> then-current educational placement of the child,
> or, if applying for initial admission to a
> public school, shall, with the consent of the
> parents, be placed in the public school program
> until all such proceedings have been completed.

20 U.S.C. § 1415(j). Subsection (k)(4) concerns a child's
placement pending a hearings officer's decision. Although the
statute itself does not speak of payment or reimbursement, the
Ninth Circuit has interpreted the stay put provision as requiring
a school district to fund the child's "current educational
placement" at a private school, when applicable, during the
pendency of any administrative or judicial proceedings under the
IDEA. See Clovis Unified Sch. Dist. v. Cal. Office of Admin.
Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (per curiam).

The IDEA does not define the phrase "current educational placement." However, the Ninth Circuit has interpreted the phrase to mean "the placement set forth in the child's last implemented IEP." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 902-03 (9th Cir. 2009) ("Capistrano") (citing Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir, 2002), Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 (6th Cir. 1990), and Drinker v. Colonial Sch. Dist., 78 F.3d 869, 867 (3d Cir. 1996)).

A post-placement administrative or judicial determination can also define the "current educational placement" of a child. "Where a parent unilaterally changes the placement of a child, but a subsequent administrative or judicial decision confirms that the parental placement is appropriate, the decision 'constitute[s] an agreement by the State to the change of placement' and the placement becomes the 'current educational placement' for the purposes of the stay put provision." K.D. ex rel. C.L. v. Dept. of Educ., Hawaii, 665 F.3d 1110, 1118 (9th Cir. 2011) (quoting Clovis, 903 F.2d at 641). "However, such a favorable decision for a parent must expressly find that the private placement was appropriate." Id. (citing Capistrano, 556 F.3d at 903-04).

C.B. argues that the AHO made a judicial determination that changed C.B.'s "current educational placement" to AMS for

9

purposes of the stay put provision.  The DOE, on the other hand,
argues that AMS is not C.B.'s "current educational placement"
because the AHO did not "clearly and explicitly" rule that AMS
was an appropriate private placement for stay put purposes.  The
AHO was not asked to address any stay put issue, and so
understandably did not speak in the language of the stay put
statute.  This leaves this court unable to determine whether the
AHO meant to make findings that would support application of the
stay put provision.  The court therefore remands this limited
issue to the AHO for clarification.

        The heart of what is being remanded is the difference
between a parent's (or child's) right to reimbursement for
private school tuition and a child's right to the benefit of the
stay put provision, under which a school district pays private
school tuition through the conclusion of all proceedings.  The
Ninth Circuit clearly recognizes different requirements
triggering those rights.  Of course, the parents in any case
typically argue that a school district that has failed to offer a
FAPE should provide stability for the child by paying to keep the
child in place while the matter is litigated, even if that takes
years.  School districts may express concern that litigation may
be driven by a parent's desire for stay put benefits.

         The last implemented and unchallenged IEP, dated June
9, 2009, placed C.B. at Kamali`i Elementary School.  <u>See</u> Decision

¶¶ 5-6. C.B. has since had three other IEPs, dated May 24, 2010,
October 28, 2010 (the IEP in issue in the present appeal), and
May 20, 2011. Id. ¶¶ 7, 30; Administrative Record on Appeal,
Petitioners Exhibits, at 58. All of those IEPs also placed C.B.
at Kamali`i, but either have been disputed or are currently in
dispute. See Memo. in Opp. to Pl. Dept. of Educ.'s Mot. to
Dismiss Defs.' Counterclaim at 9, Feb. 14, 2012, ECF No. 38.

As stated above, in May 2011, C.B.'s parents
unilaterally placed C.B. at AMS. Decision ¶ 45. The AHO
determined in August 2011 that the October 2010 IEP had denied
C.B. a FAPE and that C.B.'s parents were entitled to
reimbursement for the costs associated with placing C.B. at AMS.
She stated, "AMS is an appropriate program for [C.B.]" Decision
at 21. She wrote in a footnote that the DOE "shall continue to
be reimbursed until such time as an appropriate IEP is developed
for [C.B.]." Id. at n.13. C.B. argues that the AHO's finding
that AMS is appropriate is sufficient to establish that AMS is
his current educational placement. The DOE contends that the
AHO's determination that AMS is an appropriate program goes only
to whether Parents are entitled to retrospective reimbursement,
not to whether AMS is appropriate going forward (i.e., as C.B.'s
current educational placement for stay put purposes).

In some respects, the AHO's decision could be seen as
similar to some judicial decisions applying the stay put

provision.  For example, in <u>Mackey v. Board of Education for the</u> <u>Arlington Central School District</u>, 386 F.3d 158, 161-63 (2d Cir. 2004), the Second Circuit read an administrative decision as changing a child's current educational placement when an administrative hearings officer determined that the parents were entitled to retrospective reimbursement for unilaterally placing their child in a private school.  However, <u>Mackey</u>, unlike the present case, involved an express statement by the administrative hearings officer that the private school in issue "became the student's pendency placement . . . by virtue of [the officer's] decision."  <u>Id.</u> at 162.

The Ninth Circuit distinguishes between parents' entitlement to be reimbursed for private school tuition under 20 U.S.C. § 1412(a)(10)(c) and parents' entitlement to have a state pay for private school tuition during the pendency of proceedings under the stay put provision at 20 U.S.C. § 1415(j). <u>See</u> <u>Capistrano</u>, 556 F.3d at 912 n.9  To determine whether a placement is proper for purposes of reimbursement under § 1412(a)(10)(c), parents "need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."  <u>Baquizero</u>, 635 F.3d at 1159.  In <u>Capistrano</u>, the Ninth Circuit stated that a district court's statement that a

placement was "appropriate" in the context of the right to reimbursement under § 1412(a)(10)(C) "ha[d] no bearing on the merits of the [placement] for purposes of § 1415(j)." 556 F.3d at 912 n.9.

The parents in Capistrano had appealed a district court decision that the stay put provision did not apply. They argued that their son's private services became his current educational placement when the district court agreed that he was being denied a FAPE. The parents said that reimbursement was therefore proper until an appropriate IEP was developed. Id. at 912. The Ninth Circuit disagreed, noting that the district court never actually adjudicated the appropriateness of the child's placement. Id.

In Huerta v. San Francisco Unified School District, 2011 WL 5521742, at *5 (N.D. Cal. Nov. 14, 2011), the district court denied the parents' motion for application of the stay put provision because, although the administrative judge stated that the private placement in issue was appropriate, that statement referred only to reimbursement under § 1412(a)(10)(C). The administrative judge made no finding as to the child's appropriate prospective placement. Id. Indeed, the administrative judge expressly stated that he was not ordering prospective placement and that his order could not be used as a basis for application of the stay put provision. Id.

In the present case, the AHO, finding AMS to be an "appropriate program," expressly ordered "reimbursement." However, the court cannot determine whether the AHO intended to say that AMS was an appropriate placement for stay put purposes (i.e., that AMS was C.B.'s current educational placement). The AHO cited no statute when she made this finding, and her citation to Burlington, 471 U.S. 359, and Seattle School District, 82 F.3d 1493, does not answer the question, as Burlington addresses reimbursement under the stay put provision in § 1415(j), while Seattle School addresses retrospective reimbursement under § 1412(a)(10)(C). The court is concerned that, without clarification from the AHO, it may misconstrue the AHO's finding and improperly order or decline to order the DOE to fund C.B.'s placement at AMS throughout the pendency of the proceedings.

## 1. Issues on Remand.

The court therefore remands this case for the limited purpose of having the AHO clarify what she intended on page 21 of her decision in her statement that "AMS is an appropriate program for [C.B.]" and her order that his expenses at AMS be reimbursed. Decision at 21. If the AHO meant to treat AMS as C.B.'s current educational placement, the stay put provision requires the DOE to pay C.B.'s fees at AMS from at least the date of the AHO's decision until the end of all legal proceedings relating to the IEP of October 28, 2010, regardless of whether C.B. ultimately

14

prevails or loses on the merits of the DOE's administrative appeal.  See Clovis, 903 F.2d at 641.

A "current educational placement" must be, of course, educational.  A program that is appropriate only for medical or therapeutic purposes may not qualify as a "current educational placement."  See id. at 642–44.  The DOE argues that AMS is not an educational placement at all.

This court stresses that it is not focused on the use of any magic words.  This court instead is interested in knowing whether the AHO's reference to an "appropriate program" was intended to be a determination that AMS qualified as an educational placement.

If the AHO was concerned only with the appropriateness of AMS for purposes of reimbursement under § 1412(a)(10)(C), then the DOE must pay fees from the start of C.B.'s attendance at AMS until the date of the AHO's decision, unless the DOE is successful in challenging the AHO's decision.  If the DOE ultimately prevails, those fees must be paid by C.B.  See Burlington, 471 U.S. at 373–74; Clovis, 903 F.3d at 641, 645 (ordering a school district to fund the student's stay put placement from the date of the administrative decision changing her current educational placement through the pendency of the appeals, but denying reimbursement for the costs prior to the administrative decision because the Ninth Circuit disagreed with

the district court and the hearings officer that the placement

was educational).  If the fees were previously required to be

paid by the DOE and the DOE ultimately prevails, then the issue

of whether the DOE may seek reimbursement from Parents could

arguably be litigated.[4]

If, however, the AHO did not intend to find that AMS is

an appropriate placement for the purpose of changing C.B.'s

current educational placement, the stay put provision will not

require the DOE to pay for C.B.'s placement there during the

pendency of any appeal.  As stated above, the stay put provision

requires a child to remain in his or her "current educational

placement" during the course of administrative and judicial

proceedings.  <u>See, e.g.</u>, <u>Capistrano</u>, 556 F.3d at 911.  The

current educational placement is the placement set forth in the

last implemented IEP, unless a court or agency has changed a

---

[4] Whether the IDEA permits the DOE to recover money paid to
C.B. was a point of contention on the DOE's preliminary
injunction motion.  The court was surprised that the DOE argued
that the IDEA precludes a school district from recovering money
paid to reimburse parents pursuant to an administrative decision,
even if the school district prevails on appeal.  Order Denying
Plaintiff's Motion for a Preliminary Injunction 7, Jan. 24, 2012,
ECF No. 34.  The court noted that "the proposition that a public
entity cannot recover from parents under the IDEA is, in fact,
not something this court can find stated in any controlling
authority."  <u>Id.</u>  The court conceded that it was "unaware of
whether such recovery has ever been ordered."  Indeed, the court
acknowledged "that some courts have barred recovery."  <u>Id.</u> at 9
(citing <u>Jenkins v. Squillacote</u>, 935 F.2d 303, 307 n.3 (D.C. Cir.
1991), and <u>E.Z.-L. ex rel. R.L. v. New York City Dep't. of Educ.</u>,
763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011)).  The Ninth Circuit,
however, has not addressed this issue.

child's current educational placement by confirming that a unilateral placement by a parent is appropriate. K.D., 665 F.3d at 1118. Thus, if the AHO did not change C.B.'s current educational placement, Kamali`i is C.B.'s current educational placement and the stay put provision does not require the DOE to pay for C.B.'s tuition at AMS (regardless of which party prevails on the merits) while appeals are pending regarding the IEP of October 28, 2010. Although the AHO's order will still require the DOE to reimburse C.B.'s placement "until . . . an appropriate IEP is developed for C.B.," Decision at 21 n.13, the actual date on which any reimbursement obligation ends may end up turning on the results of judicial review.

The court does not envision a lengthy response from the AHO on the remand ordered here. The court requests only a short indication of whether the AHO meant to conclude that AMS was C.B.'s "current educational placement," thus entitling him under § 1415(j) to attend AMS at the expense of the DOE throughout the legal proceedings concerning the IEP of October 28, 2010; whether she intended to find that AMS provided only "some educational benefit," entitling C.B.'s parents to reimbursement for C.B.'s attendance at AMS for a discrete period of time under § 1412(a)(10)(C); or whether she intended both. For the AHO's convenience, the court has attached a form for the AHO's use in responding. The AHO is free to provide a written response without using the attached form.

C.   The DOE's Additional Arguments.

     The court is unpersuaded by the DOE's other arguments
against application of the stay put provision in light of this
remand order.  In its reply, the DOE argues that the AHO's
decision cannot be said to have changed C.B.'s current
educational placement because Parents did not ask the AHO to
change C.B.'s placement; they sought only reimbursement.  The
court disagrees with the DOE.  Although the DOE cites Clovis, 903
F.3d 635, in which the Ninth Circuit affirmed a grant of stay put
benefits when an administrative law judge expressly ordered the
child to be placed at a private institution, Clovis did not state
that the stay put provision was inapplicable when an
administrative hearings officer or court determined only that a
placement was appropriate, rather than ordering placement.
Indeed, the Second Circuit has applied the stay put provision in
just such circumstances.  See, e.g., Mackey, 386 F.3d at 161
(cited with approval by the Ninth Circuit in Capistrano, 556 F.3d
at 912).

     The DOE also argues that, even if the AHO did change
C.B.'s current educational placement to AMS, that placement ended
on May 20, 2011, when C.B.'s most recent IEP placed C.B. at
Kamali`i, as the AHO ordered reimbursement only until an
appropriate IEP was prepared for C.B.  Relying on a case from the
Fifth Circuit, the DOE argues that C.B.'s current IEP is presumed
"appropriate" until an AHO determines otherwise.  See R.H. v.

18

Plano Ind. Sch. Dist., 607 F.3d 1003, 1010-11 (5th Cir. 2010).
The DOE, however, provides no authority suggesting that the Ninth
Circuit recognizes such a presumption.  To the contrary, the
Ninth Circuit has referred to a "presumption that the last
*agreed-upon* IEP provides a FAPE." Ms. S. ex rel. G. v. Vashon
Island Sch. Dist., 337 F.3d 1115, 1135 n.26 (9th Cir. 2003),
superseded on other grounds by 20 U.S.C. § 1414(d)(1)(B)
(emphasis added).  Parents do not agree with the May 2011 IEP,
and there is presently a pending due process challenge.  Although
the DOE states that the pending challenge has no merit, that
challenge is not before this court in the present case.  While
the adequacy of the May 2011 IEP may affect any reimbursement
period in this case, the court cannot at this time say that the
May 2011 IEP was or was not adequate.

    Finally, the DOE also cites three cases from other
jurisdictions in which stay put benefits were denied on the
ground that, although a change of placement had occurred, the
change resulted in only a temporary placement.  See Verhoeven v.
Brunswick Sch. Comm., 207 F.3d 1 (1st Cir. 1999); Monticello Sch.
Dist. No. 25 v. George L., 102 F.3d 895 (7th Cir. 1996); Leonard
v. McKenzie, 869 F.2d 1558 (D.C. Cir. 1989).  In each of those
cases, however, the hearings officer expressly stated that the
placement was to end at a designated time.  Thus, in Verhoeven,
207 F.3d at 3-4, pursuant to an agreement between the school

district and the parents, the child was placed at a private school for only one school year, and the agreement expressly stated that the parties intended the child to return to a public school the next year.  In <u>Monticello</u>, 102 F.3d at 899, the administrative hearings officer required a school district to reimburse the parents for a private placement only through the semester following the hearings officer's decision.  In <u>Leonard</u>, 869 F.2d at 1564, the administrative hearings officer allowed the child to complete the then-current school year at the private school, then transition to the public school.

It may be that, had the AHO explicitly stated that she was changing C.B.'s placement until, for example, the end of the 2011 to 2012 school year, application of the stay put provision might not be warranted.  However, the AHO did not designate a specific end point.  The court need not address whether, by limiting reimbursement to whenever an appropriate IEP was developed, the AHO precluded the application of the stay put provision, as an answer from the AHO as to whether she intended to change C.B.'s placement such that stay put would apply throughout the appellate proceedings will be dispositive of this issue.

D.    <u>Sanctions.</u>

In its reply to C.B.'s opposition to its motion to dismiss, the DOE argues that this court should sanction C.B. for engaging in litigation abuse.  As the DOE does not make this

argument pursuant to any rule or statute, the court construes this request as invoking the court's inherent power.

A court may impose sanctions under its inherent power when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or "against counsel who willfully abuse the judicial process." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)). While the court's inherent power is broad in that it applies to "a whole range of litigation abuses," the court is required to find bad faith or "conduct tantamount to bad faith." Id. at 991, 994.

The DOE suggests that, by challenging C.B.'s IEP of May 20, 2011, with allegedly "unmeritorious" arguments, C.B. has engaged in abusive and frivolous litigation. The court declines to sanction C.B. based on conduct that has not occurred in this case. Moreover, the court expresses no opinion as to whether C.B.'s due process request regarding the IEP of May 20, 2011, has merit, as that IEP is under administrative review. There is no indication that C.B. or Parents have acted in bad faith.

V.       CONCLUSION.

The DOE's motion to dismiss is DENIED as moot with respect to Counterclaims 2, 3, 4, and 5, which have been voluntarily dismissed. The DOE's motion to dismiss with respect to Counterclaim 1 and C.B.'s stay put motion are stayed pending the AHO's response to the present remand order. On remand, the

AHO is asked to clarify what she intended on page 21 of her decision in stating that AMS is an appropriate program for C.B. and by using the term "reimbursement." In particular, she is asked to clarify whether she intended to change C.B.'s current educational placement. The AHO may, but need not, use the attached form.

The AHO may mail her response to the Clerk of Court, United States District Court, 300 Ala Moana Blvd., Honolulu, HI 96850. The Clerk of Court is directed to file the response and to serve it on the attorneys in this case.

In the meantime, the DOE's motion to dismiss Counterclaim 1, ECF No. 15, and C.B.'s stay put motion, ECF No. 22, are set for a continued hearing on Monday, June 18, 2012, at 9:45 a.m. If the parties are served with the AHO's response to the present order before May 11, 2012, they should consult with each other as to whether supplemental briefs should be filed and, if so, submit a proposed briefing schedule in writing to the court. Any briefing schedule should conclude no later than June 4, 2012. If the AHO's response is not received before May 11, 2012, then the hearing may be rescheduled.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 29, 2012.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

       Controlling law distinguishes between parents'
entitlement to be reimbursed for private school tuition under
20 U.S.C. § 1412(a)(10)(c) and parents' entitlement to have the
DOE pay for private school tuition during the pendency of
proceedings under the stay put provision at 20 U.S.C. § 1415(j).
In stating that "AMS is an appropriate program for Student" and
ordering "reimbursement" on page 21 of the Findings of Fact,
Conclusions of Law and Decision issued on August 30, 2011, I
intended the following: (Select one)


_____    1.   To indicate that, because I found that AMS was an
                  appropriate educational placement for C.B., AMS
                  became C.B.'s "current educational placement" and
                  C.B.'s parents were therefore entitled, pursuant
                  to § 1415(j), to have the DOE pay for C.B. to
                  attend AMS throughout the legal proceedings
                  concerning the IEP of October 28, 2010.


_____    2.   To indicate that, because I found that AMS had
                  provided "educational instruction specially
                  designed to meet [C.B.'s] unique needs," C.B. ex
                  rel. Baquerizo v. Garden Grove Unified Sch. Dist.,
                  653 F.3d 1155, 1159 (9th Cir. 2011), C.B.'s
                  parents were entitled to have the DOE reimburse
                  them (or pay AMS directly) for C.B.'s attendance
                  at AMS for a designated period under
                  § 1412(a)(10)(c).


_____    3.   Both 1. and 2.


_____    4.   Other (please explain): _____

                  _____

                  _____

                  _____

                                         (see page 2)


Exhibit A

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


Signature: _____

Date: _____