IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI`I, | ) ) ) ) | CIVIL NO. 11-00576 SOM/RLP |
| Plaintiff, | ) ) | ORDER REVERSING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER |
| vs. | ) ) | |
| C.B., by and through his Parents, DONNA and SCOTT B., | ) ) ) | |
| Defendants. | ) ) | |

ORDER REVERSING THE DECISION
OF THE ADMINISTRATIVE HEARINGS OFFICER

I.        INTRODUCTION.

        Plaintiff Department of Education ("DOE") of the State

of Hawaii appeals an order by an Administrative Hearings Officer

("AHO") that, pursuant to the Individuals with Disabilities

Education Act ("IDEA"), the DOE reimburse Defendant C.B. and his

parents, Donna and Scott B. ("Parents"), for expenses at a

private institution.  Asserting that the DOE had failed to

provide a Free Appropriate Public Education ("FAPE") to C.B.,

Parents had sent C.B. to Autism Management Services ("AMS"), the

private facility that the child now attends.  This court

concludes that C.B. was not denied a FAPE and reverses the AHO's

decision.

II.        STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)).  The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an Individualized Education Program ("IEP"), and determine an appropriate educational placement for the student.  20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child" through an IEP. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley ("Rowley"), 458 U.S. 176, 181 (1982) (citing 20 U.S.C. § 1401(18)).  The IEP, which is prepared at a meeting attended by a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child, consists of a written document containing:

(i) A statement of the present levels of educational performance of the child;

(ii) A statement of annual goals, including short-term instructional objectives;

(iii) A statement of the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs;

. . . .

(v) The projected date for initiation and anticipated duration of these services; and

(vi) Appropriate objective criteria and evaluation procedures and schedules for determining on at least an annual basis, whether instructional objectives are being achieved.

34 C.F.R. § 222.50; see also 20 U.S.C. § 1414(d).  Local or regional educational agencies must review and, when appropriate, revise each child's IEP at least annually.  20 U.S.C. § 1414(d)(4).

Parental involvement is a central feature of the IDEA.  Hoeft, 967 F.2d at 1300.  "Parents participate along with teachers and school district representatives in the process of determining what constitutes a 'free appropriate public education' for each disabled child."  Id.

Violations of the IDEA may arise in two situations.  First, a school district, in creating and implementing an IEP, may run afoul of the IDEA's procedural requirements.  Rowley, 458 U.S. at 205-06.  Second, a school district may become liable for

3

a substantive violation of the IDEA by drafting an IEP that is
not reasonably calculated to enable the child to receive
educational benefits. Id. at 206-07. The district must provide
the student with a FAPE that is "appropriately designed and
implemented so as to convey" to the student a "meaningful"
benefit. Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).

While the IDEA guarantees certain procedural safeguards
for children and parents, the Ninth Circuit has recognized that
not every procedural violation results in denial of a FAPE. See
e.g., L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909
(9th Cir. 2009) ("Procedural flaws in the IEP process do not
always amount to the denial of a FAPE."). Procedural flaws in
the IEP process only deny a child a FAPE when the flaws affect
the "substantive rights" of a parent or child. Id. Such
substantive rights include the loss of a child's educational
opportunity or an infringement of a parent's opportunity to
participate in the IEP process. Id.

When a parent disagrees with the contents of an IEP,
the parent may challenge that IEP by demanding an administrative
due process hearing. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). A
parent may also enroll the child in a private program, and, upon
establishing that the public school failed to provide a FAPE, may
seek reimbursement. See 20 U.S.C. § 1412(a)(10)(C)(ii). To be
awarded reimbursement, a parent must establish that placement at

4

a private school was proper under the IDEA.  <u>C.B. ex rel.</u>

<u>Baquerizo v. Garden Grove Unified Sch. Dist.</u>, 653 F.3d 1155, 1159

(9th Cir. 2011) (quoting <u>Cnty. of San Diego v. Cal. Special Educ.</u>

<u>Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996)).

III.      <u>FACTUAL AND PROCEDURAL BACKGROUND.</u>

          C.B. is a five-year-old boy with autism.

Administrative Record on Appeal ("AR") at 227 ("Decision") ¶ 1.

He has received special education since 2009.  <u>Id.</u> ¶ 4.  Since

May 2011, C.B. has been enrolled at AMS, a private program for

children with autism.  <u>Id.</u> ¶ 45.  C.B. previously attended

Horizons Academy, a private school.  <u>Id.</u> ¶ 18.

          Disputes about the one-to-one paraprofessional services

provided by the DOE are prominent in the present case.  C.B.'s

home public school was Kamali'i Elementary School on the island

of Maui.  <u>Id.</u> ¶ 16.  An IEP dated June 18, 2009, required

Kamali'i to provide twenty-nine hours per week of daily one-to-

one paraprofessional services by a DOE-contracted provider.

<u>Id.</u> ¶ 5.  Another IEP was prepared for C.B. on May 28, 2010.

<u>Id.</u> ¶ 6.  The May 2010 IEP replaced the contracted provider with

a DOE employee and required that the paraprofessional have

certain credentials.  <u>Id.</u> ¶ 6-7.  The May 2010 IEP also removed

the twenty-nine-hour requirement and stated only that C.B. would

receive the one-to-one paraprofessional services "daily."

Petitioners' Exhibits at 11.  Not satisfied with the new DOE

paraprofessional and allegedly seeing C.B.'s behavior regress,
Parents moved C.B. to Horizons in September 2010.  Decision
¶¶ 8-16.

On October 28, 2010, the DOE held an IEP meeting that
resulted in the IEP in issue before this court.  Id. ¶ 22;
Petitioners' Exhibits at 28.  C.B.'s father wanted the IEP to
include services designed to ease C.B.'s transition back to
Kamali`i.  Decision ¶ 24.  Parents also requested that the IEP
require the one-to-one paraprofessional to have certain
credentials required by the IEP of May 24, 2010.  Id. ¶ 28.  The
DOE refused on the ground that doing so would limit which
individuals could work with C.B.  Id. ¶ 28.  C.B.'s father asked
how much time the paraprofessional would spend with C.B. each day
and was told that "someone would always be there to watch Student
at all times."  Id. ¶ 29.  The October 2010 IEP ultimately did
not require any credentials and provided that C.B. would receive
one-to-one paraprofessional support "daily."  Id. ¶ 30;
Petitioners' Exhibits at 39.

Parents requested a due process hearing on April 26,
2011.  The AHO convened a hearing on July 18, 2011, and issued
her decision on August 30, 2011.  The AHO made numerous factual
findings and concluded that the DOE had procedurally violated the
IDEA (1) by not discussing C.B.'s transition needs at the IEP
meeting on October 28, 2010, and by not including a transition

plan or addressing C.B.'s transition needs in his October 2010
IEP, and (2) by failing to provide Parents with information they
requested about the paraprofessional services.  Decision
at 18-19.  She then concluded that those procedural violations
denied C.B. a FAPE.

The AHO also concluded that, under <u>Burlington</u>, 471
U.S. 359, Defendants were entitled to reimbursement because
C.B.'s placement at AMS had been appropriate.  <u>Id.</u> at 21.  She
ordered the DOE to reimburse Parents for the AMS costs until the
DOE developed an appropriate IEP for C.B.  <u>Id.</u>  The present
appeal is the DOE's challenge to the AHO's Decision.

On January 24, 2012, this court denied the DOE's motion
for a preliminary injunction.  The DOE sought to bar enforcement
of the AHO's Decision ordering the DOE to reimburse Parents for
services provided to C.B. at AMS.  Three factors of the four-
factor preliminary injunction test weighed against granting the
motion.  This court did, however, note with respect to the fourth
factor that the DOE was likely to succeed on the merits of its
appeal.

On December 16, 2011, C.B. filed a "stay put" motion,
which asked this court to direct the DOE to fund C.B.'s placement
at AMS during the pendency of judicial proceedings.  Because this
court was unable to determine whether the AHO had intended to
change C.B.'s "current educational placement" when she referred

to AMS as an "appropriate program" for C.B. and ordered

reimbursement, this court, on March 29, 2012, stayed the "stay

put" motion pending a remand to the AHO for clarification on that

limited issue.

IV.      STANDARD OF REVIEW.

        Any party aggrieved by a decision of a due process

hearings officer under the IDEA may appeal the findings and

decision to any state court or a United States district court.

20 U.S.C. § 1415(i)(2).   The party challenging the administrative

decision has the burden of proving deficiencies in the

administrative decision.   Seattle Sch. Dist., No. 1 v. B.S.,

82 F.3d 1493, 1498 (9th Cir. 1996).

        When evaluating an appeal of an administrative

decision, a court "(i) shall receive the records of the

administrative proceedings; (ii) shall hear additional evidence

at the request of a party; and (iii) basing its decision on the

preponderance of the evidence, shall grant such relief as the

court determines is appropriate."   20 U.S.C. § 1415(i)(2)(C).

        Under the IDEA, a district court reviews a hearings

officer's conclusions de novo.   Ashland Sch. Dist. v. Parents of

Student E.H., 587 F.3d 1175, 1182 (9th Cir. 2009).   However, de

novo under the IDEA "carries with it the implied requirement that

due weight shall be given to [the administrative] proceedings."

Id. (quoting Rowley, 458 U.S. at 206).   A district court "must

give deference to the state hearing officer's findings, . . . and
avoid substituting its own notions of sound educational policy
for those of the school authorities which it reviews."
Id. (internal quotation marks, modifications, and citations
omitted).  A court must consider the findings carefully and
respond to the hearings officer's resolution of each material
issue.  Capistrano Unified Sch. Dist. v. Warternberg, 59 F.3d
884, 891 (9th Cir. 1995).  The court, however, is free to accept
the findings in part or in whole.  Id.  Greater deference is
appropriate when the findings are "thorough and careful." JG v.
Douglas Cnty. Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008).

V.        ANALYSIS.

          This court's reversal of the AHO's Decision is driven
by this court's view that the IDEA does not require what the AHO
ordered, even though it might be good policy if the IDEA did so
require.  As Parents and the AHO acknowledge, the IDEA does not
purport to require schools to provide the ideal education for
disabled children.  "[A]n appropriate public education does not
mean the absolutely best of potential-maximizing education for
the individual child." J.W. ex rel. J.E.W. v. Fresno Unified
Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (quoting Gregory K.
v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987))
(quotation marks omitted).  The AHO appears to this court to be
requiring the DOE to do more than the IDEA requires.

9

C.B. argued to the AHO (and continues to argue to this court) that, under the IDEA, the DOE was required to discuss his transition needs and provide him with more information than was provided about his one-to-one paraprofessional services.  The AHO agreed.  It may well be that the DOE should have provided C.B. with more discussion about his transition needs and with more details about how often he would receive the paraprofessional's services.  However, if C.B. was entitled to have those discussions, that entitlement is not grounded in the IDEA, which requires school districts "to provide only a 'basic floor of opportunity.'" <u>Id.</u> (quoting <u>Rowley</u>, 458 U.S. at 200-01).  The court therefore reverses the AHO's decision that the DOE failed to comply with the IDEA.

A.   <u>Transition Needs.</u>

The AHO concluded that the DOE committed a procedural violation of the IDEA by "not discussing Parents' concerns about Student's transition needs at the [October 28, 2010, IEP] meeting, by not including a transition plan and/or by not addressing Student's needs for transition in the [October 2010] IEP goals and/or objectives." <u>Id.</u>  She stated:

> Though the IDEA does not require an IEP
> [to] contain a transition plan, it does
> require the [IEP] Team to discuss and develop
> an educational plan that addresses each of
> the child's unique needs and any appropriate
> support services to allow the child to take
> advantage of educational opportunities.  A
> transition plan or process between Student's

> non-DOE placement and the Home School is a
> unique need of Student and a support service
> that allows Student to take advantage of the
> educational opportunities in his IEP.

Decision at 18.

As recognized by the AHO, and as previously stated by this court, the DOE is not required to include a transition plan in an IEP whenever a child moves from a private institution to a public school.  See L.I. v. Hawaii, Dep't. of Educ., Civil No. 10-00731 SOM/BMK, 2011 WL 6002623, at *6 (D. Haw. Nov. 30, 2011).  See also M.N. v. Hawaii, Dep't. of Educ., Civil No. 11-00121 SOM/BMK, 2011 WL 6020861, at *4 n.1 (D. Haw. Dec. 1, 2011) (questioning the validity of an AHO's conclusion that, because the IDEA requires that a student's needs be met, the failure of an IEP to address transitional needs constituted the denial of a FAPE).

The IDEA clearly requires an IEP to include a number of matters, such as a statement of the child's present level of achievement and measurable goals.  20 U.S.C. § 1414(d)(A)(i).  Nowhere is there a requirement that an IEP include a transition plan when a child moves from a private facility to a public school.  The IDEA explicitly prohibits construing § 1414 to require "that additional information be included in a child's IEP beyond what is explicitly required in this section."  20 U.S.C. § 1414(d)(1)(A)(ii).

Section 1414 requires an IEP to include transition services only in certain circumstances not applicable here. Thus, an IEP must address transition services for a child age sixteen and above to assist the child in reaching "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). Transition services must also be included in an IEP when a child is moving from school to post-school activities, to post-secondary activities, or to vocational training. "[T]he statutory provision of the IDEA specifically addressing transition services does not mandate such services when a transition from private to public school takes place." James M. v. Hawaii, Dep't of Educ., Civ. No. 10-00369 LEK, 2011 WL 1750718, at *11 (D. Haw. Feb. 25, 2011) (quoting B.B. v. Hawaii, Dep't of Educ., 483 F. Supp. 2d 1042, 1056 (D. Haw. 2006)).

In L.M. v. Hawaii, Dep't of Educ., Civil No. 05-00345 ACK/KSC, 2006 WL 2331031, at *16 (D. Haw. Aug. 9, 2006), another judge in this district stated, "While no transition plan is required by the IDEA, it is evident from the testimony of various individuals and from the IEP that a transition plan is desirable in order to minimize Student's educational regression and to stabilize Student emotionally." That case addressed the adequacy

12

of an existing transition plan.  <u>Id.</u> at *15.  Deferring to the

hearings officer's finding, Judge Alan Kay concluded that the

plan was adequate.  <u>Id.</u> at *16.  <u>See also</u> <u>B.B.</u>, 483 F. Supp. 2d

at 1057 (addressing whether an existing transfer plan was

adequate and stating, "The IDEA does not mandate the creation of

a specific transition plan when a student moves from a private

placement to a public school, but in some cases, the

knowledgeable education experts agree that a particular student

would benefit from such a plan.").

        In <u>E.Z.-L. v. New York City Department of Education</u>,

the United States District Court for the Southern District of New

York stated that "there is no requirement in the IDEA for a

'transition plan' when a student moves from one school to

another."  762 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (citing

<u>Robert B. v. W. Chester Area Sch. Dist.</u>, 2005 WL 2396968, at

*8-9, (E.D. Pa. Sept. 27, 2005)).  In <u>E.Z.-L.</u>, the administrative

hearings officer recognized that a transition plan was not

required by statute in an IEP but noted that the IEP should have

included specific services to assist the student's transition to

a new school.  <u>Id.</u>  The hearings officer ultimately concluded

that the school district's failure to include such services in

the IEP did not deny a FAPE because the support services would

have been discussed elsewhere.  <u>Id.</u>  On appeal, the district

court agreed that the school district was not required to create

a transition plan, and that the school district's failure to identify transition services in the IEP did not result in the denial of a FAPE.  <u>Id.</u>  The district court did not expressly rule on the issue of whether the administrative hearings officer's conclusion that the IEP should have included transition services was correct.  <u>Id.</u>

The lack of transition services in an IEP was also discussed in <u>Park Hill School District v. Dass</u>, 655 F.3d 762, 766 (8th Cir. 2011).  In that case, the Eighth Circuit disagreed with the student's parents that the lack of a transition plan in an IEP amounted to the denial of a FAPE.  The Eighth Circuit stated, "The absence of IEP provisions addressing transition . . . issues does not, standing alone, violate the IDEA or deprive the disabled child of a FAPE." (citations omitted).  <u>Id.</u>  The Eighth Circuit did not, however, go so far as to say that the lack of a transition plan could never be an IDEA violation.  Instead, in dicta, the Eighth Circuit said that the absence of provisions regarding transition "was at most a procedural, not a substantive error."  <u>Id.</u> (citations omitted).  The Eighth Circuit reversed the administrative decision, which had concluded that the lack of a transition plan resulted in the denial of a FAPE, noting that the administrative panel had failed to consider the preparation of a transition plan subsequent to development of the IEP.  <u>Id.</u> at 767.

In the present case, the AHO expressly recognized that the transition plan Parents sought in connection with C.B.'s move from Horizons back to a public school was something the DOE was not obligated to include in the IEP.  However, the AHO appears to have concluded that, if transition services could be viewed as being among C.B.'s "unique needs," the DOE's failure to discuss transition services and include a transition plan in the IEP constituted a failure to provide a FAPE.  This conclusion was not accompanied by citations to authority and appears to nullify the very recognition by the AHO that the IDEA does not require transition services to be included in the IEP.  The DOE had a transition plan separate from (and subsequent to) the IEP.  Thus, the absence of an IDEA provision requiring that C.B.'s IEP include a transition plan did not mean C.B.'s transition needs were ignored.  Parents have not argued that there is any substantive deficiency in the transition plan of December 2, 2010.

Of course, the IDEA does indeed require the DOE to address the unique needs of a child, and a child may well have transition needs.  The Eighth Circuit in Park Hill even stated that a failure to address transition needs might at most constitute a procedural violation of the IDEA.  But to the extent § 1414 bars requiring an IEP to include information not expressly required by law, requiring a transition plan in an IEP would be

15

an end-run around that bar.  If that bar and the "unique needs"
provision are to be read as compatible, it appears to this court
that the IDEA must be read as addressing a child's unique needs
in the areas that the IDEA requires an IEP to address.
Otherwise, a particular child's "unique needs" could eliminate
any limit to the scope of an IEP.

        The court stresses that its intent is not to diminish
the need for transition services, which may be highly important.
The court is instead concerned about limiting violations of the
IDEA to the terms of the IDEA itself.  Not every denial of
services constitutes a denial of a FAPE, and no statutory
provision requires that a transition plan be included in an IEP.

        At the hearing before this court on April 24, 2012,
C.B.'s counsel expressed concern that the DOE had allegedly
declined to discuss C.B.'s need for transition services at the
IEP meeting.  C.B.'s counsel noted that a parent might not
realize that, separate from an IEP meeting, discussion about
transition services could occur.  Even if the IDEA does not
require the DOE to discuss transition services at an IEP meeting,
the court agrees that it could be helpful for the DOE to assure
parents that a separate meeting on transition services will be
scheduled.  C.B. appears to be complaining that the DOE should
have displayed a more cooperative attitude toward Parents.  That,

however, is a matter that in this case did not implicate a denial
of a FAPE.

        B.   One-to-One Paraprofessional Services.

        The court agrees with the DOE that the AHO erred in two
respects related to the paraprofessional services.

        First, the AHO erred by considering issues that C.B.
had not raised in his due process hearing complaint.  Section
1415(f)(3)(B) of the United States Code limits the subject matter
of an impartial due process hearing held pursuant to the IDEA to
issues raised in a due process complaint:  "The party requesting
the due process hearing shall not be allowed to raise issues at
the due process hearing that were not raised in the notice filed
under subsection (b)(7), unless the other party agrees
otherwise."  20 U.S.C. § 1415(f)(3)(B).  See also Cnty. of San
Diego, 93 F.3d at 1465  ("The scope of the administrative hearing
. . . is limited to the 'complaint' raised to obtain the
hearing."); James M., 2011 WL 1750718, at *12 ("The Ninth Circuit
has also held that review in IDEA cases is specifically limited
to the issues raised in the administrative complaint." (citing
Cnty. of San Diego, 93 F.3d at 1465)).

        C.B.'s due process hearing request complained that, in
using the word "daily," a word Parents said was "open to
interpretation," the IEP of October 28, 2010, had failed to state
the frequency of "one to one professional support."  AR at 4.

The DOE argues that the AHO expanded C.B.'s request beyond the frequency of services and considered whether the IEP team had also refused to allow Parents to discuss both the qualifications of the paraprofessional at the IEP meeting and the substance of C.B.'s paraprofessional services.  The DOE contends that it did not agree to allow Parents to raise those substantive complaints at the administrative hearing.

At the administrative hearing, the AHO received testimony about the frequency of the paraprofessional services, the substance of those services, and the qualifications of the paraprofessional.  C.B. does not argue that, notwithstanding the relaxed evidentiary rules usually applied in administrative proceedings, the DOE should have known from that testimony that the AHO would rely on it in issuing her ruling.  The AHO indeed based her ruling at least in part on that evidence.

For example, responding to questioning from Defendants' counsel, C.B.'s father testified that Parents had asked the IEP team to write the paraprofessional's credentials into the IEP. Transcript of Proceedings ("Transcript") at 27:11-25.  In her Decision, the AHO stated that "the substance of Student's paraprofessional services--the credentials and/or qualifications of the individual providing these services; the consistency of the 1:1 services provided to Student; and the amount of services

18

Student would receive during the day--was a major concern for Parents." Decision at 18.

     She found that Parents had requested information about the paraprofessional services, such as information pertaining to the frequency of the services, as well as the credentials of the professional, but that this information was not provided to Parents.  Id.  She ultimately concluded:

> The fact that Student's paraprofessional
> services would be provided to him "daily" or
> "throughout the day", combined with the lack
> of this information provided to Parent[s] in
> this case, especially in light of Student's
> previous problems with paraprofessional
> services and regression at the Home School,
> is a procedural violation of the IDEA.  The
> October 28, 2010 IEP stated the reasons that
> Student required paraprofessional services,
> but did not state, nor was it fully
> contemplated or discussed at the IEP meeting,
> what the substance of Student's
> paraprofessional services would be.

Id. at 19.

     The AHO appears to have held that the DOE procedurally violated the IDEA by refusing to provide Parents with information about both the frequency of services and the substance of the services, including the credentials and the qualifications of the paraprofessional.  C.B.'s due process complaint, however, raised only the frequency of the paraprofessional services, not the substance of the services.  It is unclear whether the AHO would have determined that the DOE had violated the IDEA if her

conclusion had been properly limited to the issue of the frequency of the paraprofessional services.

The court turns now to the separate issue of whether the DOE denied C.B. a FAPE on the frequency ground that was indeed raised by C.B. in his due process hearing complaint.  C.B. complained that the IEP of October 28, 2010, "fails to identify the frequency of the service of the one to one professional support."  "An individualized educational program is a 'formal, written offer [that] creates a clear record that will do much to eliminate troublesome factual disputes.'"  J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 952 (9th Cir. 2009) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1526 (9th Cir. 1994) (modification in original)).  Under the IDEA, an IEP must include "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).  The IEP must state the "anticipated frequency, location, and duration of those services."  Id. § 1414(d)(1)(A)(i)(VII).

Discussing a comment regarding 34 C.F.R. § 300.320(a)(7), which mirrors § 1414(d)(1)(A)(i)(VII), the Federal Register states:

> What is required is that the IEP include information about the amount of services that will be provided to the child, so that the level of the agency's commitment of resources will be clear to parents and other IEP Team members.  The amount of time to be committed

> to each of the various services to be
> provided must be appropriate to the specific
> service, and clearly stated in the IEP in a
> manner that can be understood by all involved
> in the development and implementation of the
> IEP.

Assistance to States for the Education of Children With
Disabilities and Preschool Grants for Children With Disabilities,
Analysis of Comments and Changes, 71 Fed. Reg. 46,667 (Aug. 14,
2006).

C.B. argues that the October 2010 IEP reference to the
"daily" provision of one-to-one paraprofessional services did not
sufficiently state how frequently C.B. was to receive those
services.

In J.L., the parents of a child with learning
disabilities argued that an IEP had not sufficiently specified
the amount of time to be devoted to their child's services when
it provided for 972 minutes per week of specially designed
instruction in reading, writing, mathematics, study skills, and
transitions.  592 F.3d at 943.  The Ninth Circuit held that the
"lump-sum number" was sufficient because the services to be
provided to the student were "access-based" modifications to an
education program.  Id. at 953.  That is, the services depended
on access to books on tape, extended time for exams, and access
to a peer note-taker.  Id.  Because the modifications were
access-based and the child presumably had unlimited access to
each accommodation, the Ninth Circuit said that it was not

reasonable for the school district to predict the amount of time the student would actually use each accommodation.  Id. at 952.

By contrast, in Bend LaPine School District v. K.H., 2005 WL 1587241, at *9-10 (D. Or. June 2, 2005), the United States District Court for the District of Oregon agreed with an administrative hearings officer that an IEP stating that specially designed instruction would be provided "throughout the school day" was too vague and indefinite, and failed to "make clear to parents or other IEP team members the District's specific commitment of resources."

The court understands Parents' concern about how often C.B. would receive one-to-one paraprofessional services.  The term "daily" could be analogized to the words "throughout the school day" that were deemed insufficient in Bend LaPine. Moreover, the focus in J.L. on the access-based nature of the services that were assigned a lump-sum number of minutes could be read as suggesting that more specificity is required in other contexts.  The term "daily" suggests a very broad range.

However, the court need not here decide whether the term "daily" is sufficient, as C.B. does not show that the use of the term resulted in the denial of a FAPE.  Although C.B. argues that a violation of 20 U.S.C. § 1414(d)(1)(A)(i)(VII) is a substantive violation of the IDEA, in J.L., the Ninth Circuit suggested that a failure to sufficiently specify the frequency of

22

services was a procedural, not substantive, violation.  592 F.3d

at 953 ("Even if the District did commit a procedural violation

by failing to specify minutes, not every procedural violation

results in the denial of a free appropriate public education.").

"A procedural violation denies a free appropriate public

education if it results in the loss of an educational

opportunity, seriously infringes the parents' opportunity to

participate in the IEP formulation process or causes a

deprivation of educational benefits."  Id. (citing N.B. v.

Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors,

Missoula Cnty., Mont., 541 F.3d 1202, 1208 (9th Cir. 2008)).

In J.L., the plaintiffs failed to show how the student

was prejudiced by the school district's failure to specify the

amount of services.  Id.  The Ninth Circuit said:

> [Plaintiffs] do not allege that [the child]
> was denied an educational benefit or missed
> an educational opportunity.  Nor do they show
> that the parents' ability to participate in
> the individualized educational program
> formulation process was harmed.  Indeed, the
> record suggests that even though the
> individualized educational program did not
> list the amount of services, everyone
> involved in the individualized educational
> team--including [the child's] parents--knew
> of the amounts.

Id.

C.B. argues that the DOE's failure to discuss how often

during the day C.B. would receive one-to-one paraprofessional

services infringed on Parents' opportunity to participate in the

IEP process.  C.B. contends that, after the IEP meeting on October 28, 2010, C.B.'s father did not know if C.B. was going to have a full-time one-to-one aide.  C.B. says that the IEP team's refusal to define the term "daily" at that meeting impeded Parents' participation.

The record does not demonstrate the alleged impediment. C.B.'s father testified at the administrative hearing that he had asked the DOE how long the paraprofessional would spend with C.B. each day, and that the response was:  "There would always be somebody there to watch him."  Transcript at 28:14-17.  C.B.'s father says that this was nonresponsive.  However, the record does not indicate that C.B.'s father pressed the DOE for more information about the frequency of the paraprofessional services, or indicated in any lesser manner that he was unsatisfied with the DOE's statement.

At the hearing before this court, C.B. argued that the DOE's response was evasive on its face and that the IEP team should have known that it had not provided C.B.'s father with the information requested.  Certainly, a more helpful response would have indicated how many minutes or hours per day the paraprofessional would be spending with C.B., or would have clarified whether the paraprofessional planned to work with C.B. on an as-needed basis.  But the court's inquiry here is not as to what would have been the optimum response.  Instead, the court is determining whether the response denied C.B. a FAPE.

24

What C.B. is asking this court to do is to require the DOE to recognize on its own when a parent is not satisfied that the DOE has provided information requested by the parent.  C.B.'s argument would be persuasive with respect to a substantive violation of the IDEA.  In J.L., however, the Ninth Circuit suggested that this kind of issue was procedural.  592 F.3d at 953.  With a procedural violation, assuming one occurred here, this court takes a different approach.  C.B. would require the DOE to proactively review everything it says even if the parent does not communicate concern.  C.B. would make a mind-reader of the DOE with respect to an alleged procedural violation.  The court declines to place upon a school the burden of recognizing a parent's concern about the inadequacy of a school's response to the parent's inquiry when the parent has given no indication of concern.

As the United States District Court for the District of Columbia recognized in Schoenbach v. Dist. of Columbia, parental "input is critical in assuring that disabled children get the services they need."  309 F. Supp. 2d 71, 89 (D.D.C. 2004) (citing Rowley, 458 U.S. at 209 ("[I]ndividualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child.")).  "But parents must talk, or complain, when given the chance.  Timely input can allow a school district to respond meaningfully to parental requests."  Id.  See also

25

Ashland, 587 F.3d at 1184 (holding that the IDEA permitted a district court to deny reimbursement when the parents failed to give the school district notice of their objections to the IEP in issue).  The present record does not show that the DOE's failure to provide more detail on the frequency of paraprofessional services denied C.B. a FAPE under the circumstances of this case.

The court reverses the AHO's Decision with respect to whether the DOE denied C.B. a FAPE.  Because reimbursement under 20 U.S.C. § 1412(a)(10)(C)(ii) is only warranted when there has been a denial of a FAPE, the DOE is not required to reimburse Parents for the costs of C.B.'s attendance at AMS under that provision.  The court need not reach the issue of whether AMS is an appropriate placement for C.B.

VI.    CONCLUSION.

The AHO erred in concluding that C.B. was denied a FAPE.  The court concludes: (1) the DOE was not required under the IDEA to address C.B.'s transition needs or develop a transition plan in the IEP or at the meeting held to develop that IEP; (2) the AHO erred by considering the substance of C.B.'s paraprofessional services when C.B. complained about only the frequency of those services in his impartial due process hearing complaint; (3) any failure of the IEP of October 28, 2010, to sufficiently state the frequency of the one-to-one paraprofessional services was a procedural violation of the IDEA that did not deny C.B. a FAPE.  The AHO's Decision is reversed.

26

This order does not affect the "stay put" issue previously remanded to the AHO.  The parties have agreed that entry of judgment should occur after this court addresses the result of that partial remand.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 1, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

State of Hawaii, Dep't. of Educ. v. C.B.,; Civil No. 11-00576 SOM/RLP; ORDER REVERSING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER.