IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DEPARTMENT OF EDUCATION,          )     CIVIL NO. 11-00576 SOM/RLP
STATE OF HAWAI`I,                 )
                                  )     ORDER REVERSING THE DECISION
                                  )     OF THE ADMINISTRATIVE
          Plaintiff,              )     HEARINGS OFFICER
                                  )
     vs.                          )
                                  )
C.B., by and through his          )
Parents, DONNA and SCOTT B.,      )
                                  )
          Defendants.             )
_____ )


                ORDER REVERSING THE DECISION
             OF THE ADMINISTRATIVE HEARINGS OFFICER

I.        INTRODUCTION.

          Plaintiff Department of Education ("DOE") of the State

of Hawaii appeals an order by an Administrative Hearings Officer

("AHO") that, pursuant to the Individuals with Disabilities

Education Act ("IDEA"), the DOE reimburse Defendant C.B. and his

parents, Donna and Scott B. ("Parents"), for expenses at a

private institution.  Asserting that the DOE had failed to

provide a Free Appropriate Public Education ("FAPE") to C.B.,

Parents had sent C.B. to Autism Management Services ("AMS"), the

private facility that the child now attends.  This court

concludes that C.B. was not denied a FAPE and reverses the AHO's

decision.

II.        <u>STATUTORY FRAMEWORK.</u>

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." <u>Hoeft v. Tucson Unified Sch. Dist.</u>, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing <u>Honig v. Doe</u>, 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an Individualized Education Program ("IEP"), and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child" through an IEP. <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u> ("Rowley"), 458 U.S. 176, 181 (1982) (citing 20 U.S.C. § 1401(18)). The IEP, which is prepared at a meeting attended by a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child, consists of a written document containing:

       (i) A statement of the present levels of
       educational performance of the child;

       (ii) A statement of annual goals, including
       short-term instructional objectives;

       (iii) A statement of the specific educational
       services to be provided to the child, and the
       extent to which the child will be able to
       participate in regular educational programs;

       . . . .

       (v) The projected date for initiation and
       anticipated duration of these services; and

       (vi) Appropriate objective criteria and
       evaluation procedures and schedules for
       determining on at least an annual basis,
       whether instructional objectives are being
       achieved.

34 C.F.R. § 222.50; see also 20 U.S.C. § 1414(d).  Local or

regional educational agencies must review and, when appropriate,

revise each child's IEP at least annually.  20 U.S.C.

§ 1414(d)(4).

     "Parental involvement is a central feature of the

IDEA."  Hoeft, 967 F.2d at 1300.  "Parents participate along with

teachers and school district representatives in the process of

determining what constitutes a 'free appropriate public

education' for each disabled child."  Id.

     Violations of the IDEA may arise in two situations.

First, a school district, in creating and implementing an IEP,

may run afoul of the IDEA's procedural requirements.  Rowley, 458

U.S. at 205-06.  Second, a school district may become liable for

a substantive violation of the IDEA by drafting an IEP that is not reasonably calculated to enable the child to receive educational benefits. Id. at 206-07. The district must provide the student with a FAPE that is "appropriately designed and implemented so as to convey" to the student a "meaningful" benefit. Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).

While the IDEA guarantees certain procedural safeguards for children and parents, the Ninth Circuit has recognized that not every procedural violation results in denial of a FAPE. See e.g., L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009) ("Procedural flaws in the IEP process do not always amount to the denial of a FAPE."). Procedural flaws in the IEP process only deny a child a FAPE when the flaws affect the "substantive rights" of a parent or child. Id. Such substantive rights include the loss of a child's educational opportunity or an infringement of a parent's opportunity to participate in the IEP process. Id.

When a parent disagrees with the contents of an IEP, the parent may challenge that IEP by demanding an administrative due process hearing. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). A parent may also enroll the child in a private program, and, upon establishing that the public school failed to provide a FAPE, may seek reimbursement. See 20 U.S.C. § 1412(a)(10)(C)(ii). To be awarded reimbursement, a parent must establish that placement at

a private school was proper under the IDEA.  <u>C.B. ex rel.</u>

<u>Baquerizo v. Garden Grove Unified Sch. Dist.</u>, 653 F.3d 1155, 1159

(9th Cir. 2011) (quoting <u>Cnty. of San Diego v. Cal. Special Educ.</u>

<u>Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996)).

III.     <u>FACTUAL AND PROCEDURAL BACKGROUND.</u>

C.B. is a five-year-old boy with autism.

Administrative Record on Appeal ("AR") at 227 ("Decision") ¶ 1.

He has received special education since 2009.  <u>Id.</u> ¶ 4.  Since

May 2011, C.B. has been enrolled at AMS, a private program for

children with autism.  <u>Id.</u> ¶ 45.  C.B. previously attended

Horizons Academy, a private school.  <u>Id.</u> ¶ 18.

Disputes about the one-to-one paraprofessional services

provided by the DOE are prominent in the present case.  C.B.'s

home public school was Kamali'i Elementary School on the island

of Maui.  <u>Id.</u> ¶ 16.  An IEP dated June 18, 2009, required

Kamali'i to provide twenty-nine hours per week of daily one-to-

one paraprofessional services by a DOE-contracted provider.

<u>Id.</u> ¶ 5.  Another IEP was prepared for C.B. on May 28, 2010.

<u>Id.</u> ¶ 6.  The May 2010 IEP replaced the contracted provider with

a DOE employee and required that the paraprofessional have

certain credentials.  <u>Id.</u> ¶ 6-7.  The May 2010 IEP also removed

the twenty-nine-hour requirement and stated only that C.B. would

receive the one-to-one paraprofessional services "daily."

Petitioners' Exhibits at 11.  Not satisfied with the new DOE

paraprofessional and allegedly seeing C.B.'s behavior regress,
Parents moved C.B. to Horizons in September 2010.  Decision
¶¶ 8-16.

On October 28, 2010, the DOE held an IEP meeting that
resulted in the IEP in issue before this court.  Id. ¶ 22;
Petitioners' Exhibits at 28.  C.B.'s father wanted the IEP to
include services designed to ease C.B.'s transition back to
Kamali`i.  Decision ¶ 24.  Parents also requested that the IEP
require the one-to-one paraprofessional to have certain
credentials required by the IEP of May 24, 2010.  Id. ¶ 28.  The
DOE refused on the ground that doing so would limit which
individuals could work with C.B.  Id. ¶ 28.  C.B.'s father asked
how much time the paraprofessional would spend with C.B. each day
and was told that "someone would always be there to watch Student
at all times."  Id. ¶ 29.  The October 2010 IEP ultimately did
not require any credentials and provided that C.B. would receive
one-to-one paraprofessional support "daily."  Id. ¶ 30;
Petitioners' Exhibits at 39.

Parents requested a due process hearing on April 26,
2011.  The AHO convened a hearing on July 18, 2011, and issued
her decision on August 30, 2011.  The AHO made numerous factual
findings and concluded that the DOE had procedurally violated the
IDEA (1) by not discussing C.B.'s transition needs at the IEP
meeting on October 28, 2010, and by not including a transition

plan or addressing C.B.'s transition needs in his October 2010 IEP, and (2) by failing to provide Parents with information they requested about the paraprofessional services. Decision at 18-19. She then concluded that those procedural violations denied C.B. a FAPE.

The AHO also concluded that, under Burlington, 471 U.S. 359, Defendants were entitled to reimbursement because C.B.'s placement at AMS had been appropriate. Id. at 21. She ordered the DOE to reimburse Parents for the AMS costs until the DOE developed an appropriate IEP for C.B. Id. The present appeal is the DOE's challenge to the AHO's Decision.

On January 24, 2012, this court denied the DOE's motion for a preliminary injunction. The DOE sought to bar enforcement of the AHO's Decision ordering the DOE to reimburse Parents for services provided to C.B. at AMS. Three factors of the four-factor preliminary injunction test weighed against granting the motion. This court did, however, note with respect to the fourth factor that the DOE was likely to succeed on the merits of its appeal.

On December 16, 2011, C.B. filed a "stay put" motion, which asked this court to direct the DOE to fund C.B.'s placement at AMS during the pendency of judicial proceedings. Because this court was unable to determine whether the AHO had intended to change C.B.'s "current educational placement" when she referred

to AMS as an "appropriate program" for C.B. and ordered
reimbursement, this court, on March 29, 2012, stayed the "stay
put" motion pending a remand to the AHO for clarification on that
limited issue.

IV.      STANDARD OF REVIEW.

Any party aggrieved by a decision of a due process
hearings officer under the IDEA may appeal the findings and
decision to any state court or a United States district court.
20 U.S.C. § 1415(i)(2).  The party challenging the administrative
decision has the burden of proving deficiencies in the
administrative decision.  Seattle Sch. Dist., No. 1 v. B.S.,
82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative
decision, a court "(i) shall receive the records of the
administrative proceedings; (ii) shall hear additional evidence
at the request of a party; and (iii) basing its decision on the
preponderance of the evidence, shall grant such relief as the
court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).

Under the IDEA, a district court reviews a hearings
officer's conclusions de novo.  Ashland Sch. Dist. v. Parents of
Student E.H., 587 F.3d 1175, 1182 (9th Cir. 2009).  However, de
novo under the IDEA "carries with it the implied requirement that
due weight shall be given to [the administrative] proceedings."
Id. (quoting Rowley, 458 U.S. at 206).  A district court "must

give deference to the state hearing officer's findings, . . . and avoid substituting its own notions of sound educational policy for those of the school authorities which it reviews." Id. (internal quotation marks, modifications, and citations omitted). A court must consider the findings carefully and respond to the hearings officer's resolution of each material issue. Capistrano Unified Sch. Dist. v. Warternberg, 59 F.3d 884, 891 (9th Cir. 1995). The court, however, is free to accept the findings in part or in whole. Id. Greater deference is appropriate when the findings are "thorough and careful." JG v. Douglas Cnty. Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008).

V.     ANALYSIS.

        This court's reversal of the AHO's Decision is driven by this court's view that the IDEA does not require what the AHO ordered, even though it might be good policy if the IDEA did so require. As Parents and the AHO acknowledge, the IDEA does not purport to require schools to provide the ideal education for disabled children. "[A]n appropriate public education does not mean the absolutely best of potential-maximizing education for the individual child." J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987)) (quotation marks omitted). The AHO appears to this court to be requiring the DOE to do more than the IDEA requires.

9

C.B. argued to the AHO (and continues to argue to this court) that, under the IDEA, the DOE was required to discuss his transition needs and provide him with more information than was provided about his one-to-one paraprofessional services. The AHO agreed. It may well be that the DOE should have provided C.B. with more discussion about his transition needs and with more details about how often he would receive the paraprofessional's services. However, if C.B. was entitled to have those discussions, that entitlement is not grounded in the IDEA, which requires school districts "to provide only a 'basic floor of opportunity.'" Id. (quoting Rowley, 458 U.S. at 200-01). The court therefore reverses the AHO's decision that the DOE failed to comply with the IDEA.

A.    Transition Needs.

The AHO concluded that the DOE committed a procedural violation of the IDEA by "not discussing Parents' concerns about Student's transition needs at the [October 28, 2010, IEP] meeting, by not including a transition plan and/or by not addressing Student's needs for transition in the [October 2010] IEP goals and/or objectives." Id. She stated:

> Though the IDEA does not require an IEP
> [to] contain a transition plan, it does
> require the [IEP] Team to discuss and develop
> an educational plan that addresses each of
> the child's unique needs and any appropriate
> support services to allow the child to take
> advantage of educational opportunities. A
> transition plan or process between Student's

10

> non-DOE placement and the Home School is a
> unique need of Student and a support service
> that allows Student to take advantage of the
> educational opportunities in his IEP.

Decision at 18.

As recognized by the AHO, and as previously stated by
this court, the DOE is not required to include a transition plan
in an IEP whenever a child moves from a private institution to a
public school. See L.I. v. Hawaii, Dep't. of Educ., Civil No.
10-00731 SOM/BMK, 2011 WL 6002623, at *6 (D. Haw. Nov. 30, 2011).
See also M.N. v. Hawaii, Dep't. of Educ., Civil No. 11-00121
SOM/BMK, 2011 WL 6020861, at *4 n.1 (D. Haw. Dec. 1, 2011)
(questioning the validity of an AHO's conclusion that, because
the IDEA requires that a student's needs be met, the failure of
an IEP to address transitional needs constituted the denial of a
FAPE).

The IDEA clearly requires an IEP to include a number of
matters, such as a statement of the child's present level of
achievement and measurable goals.  20 U.S.C. § 1414(d)(A)(i).
Nowhere is there a requirement that an IEP include a transition
plan when a child moves from a private facility to a public
school.  The IDEA explicitly prohibits construing § 1414 to
require "that additional information be included in a child's IEP
beyond what is explicitly required in this section."  20 U.S.C.
§ 1414(d)(1)(A)(ii).

Section 1414 requires an IEP to include transition
services only in certain circumstances not applicable here.
Thus, an IEP must address transition services for a child age
sixteen and above to assist the child in reaching "appropriate
measurable postsecondary goals based upon age appropriate
transition assessments related to training, education,
employment, and, where appropriate, independent living skills."
20 U.S.C. § 1414(d)(1)(A)(i)(VIII).  Transition services must
also be included in an IEP when a child is moving from school to
post-school activities, to post-secondary activities, or to
vocational training.  "[T]he statutory provision of the IDEA
specifically addressing transition services does not mandate such
services when a transition from private to public school takes
place."  James M. v. Hawaii, Dep't of Educ., Civ. No. 10-00369
LEK, 2011 WL 1750718, at *11 (D. Haw. Feb. 25, 2011) (quoting
B.B. v. Hawaii, Dep't of Educ., 483 F. Supp. 2d 1042, 1056 (D.
Haw. 2006)).

In L.M. v. Hawaii, Dep't of Educ., Civil No. 05-00345
ACK/KSC, 2006 WL 2331031, at *16 (D. Haw. Aug. 9, 2006), another
judge in this district stated, "While no transition plan is
required by the IDEA, it is evident from the testimony of various
individuals and from the IEP that a transition plan is desirable
in order to minimize Student's educational regression and to
stabilize Student emotionally."  That case addressed the adequacy

of an existing transition plan.  <u>Id.</u> at *15.  Deferring to the
hearings officer's finding, Judge Alan Kay concluded that the
plan was adequate.  <u>Id.</u> at *16.  <u>See also</u> <u>B.B.</u>, 483 F. Supp. 2d
at 1057 (addressing whether an existing transfer plan was
adequate and stating, "The IDEA does not mandate the creation of
a specific transition plan when a student moves from a private
placement to a public school, but in some cases, the
knowledgeable education experts agree that a particular student
would benefit from such a plan.").

In <u>E.Z.-L. v. New York City Department of Education</u>,
the United States District Court for the Southern District of New
York stated that "there is no requirement in the IDEA for a
'transition plan' when a student moves from one school to
another."  762 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (citing
<u>Robert B. v. W. Chester Area Sch. Dist.</u>, 2005 WL 2396968, at
*8-9, (E.D. Pa. Sept. 27, 2005)).  In <u>E.Z.-L.</u>, the administrative
hearings officer recognized that a transition plan was not
required by statute in an IEP but noted that the IEP should have
included specific services to assist the student's transition to
a new school.  <u>Id.</u>  The hearings officer ultimately concluded
that the school district's failure to include such services in
the IEP did not deny a FAPE because the support services would
have been discussed elsewhere.  <u>Id.</u>  On appeal, the district
court agreed that the school district was not required to create

13

a transition plan, and that the school district's failure to identify transition services in the IEP did not result in the denial of a FAPE. Id. The district court did not expressly rule on the issue of whether the administrative hearings officer's conclusion that the IEP should have included transition services was correct. Id.

The lack of transition services in an IEP was also discussed in Park Hill School District v. Dass, 655 F.3d 762, 766 (8th Cir. 2011). In that case, the Eighth Circuit disagreed with the student's parents that the lack of a transition plan in an IEP amounted to the denial of a FAPE. The Eighth Circuit stated, "The absence of IEP provisions addressing transition . . . issues does not, standing alone, violate the IDEA or deprive the disabled child of a FAPE." (citations omitted). Id. The Eighth Circuit did not, however, go so far as to say that the lack of a transition plan could never be an IDEA violation. Instead, in dicta, the Eighth Circuit said that the absence of provisions regarding transition "was at most a procedural, not a substantive error." Id. (citations omitted). The Eighth Circuit reversed the administrative decision, which had concluded that the lack of a transition plan resulted in the denial of a FAPE, noting that the administrative panel had failed to consider the preparation of a transition plan subsequent to development of the IEP. Id. at 767.

In the present case, the AHO expressly recognized that the transition plan Parents sought in connection with C.B.'s move from Horizons back to a public school was something the DOE was not obligated to include in the IEP. However, the AHO appears to have concluded that, if transition services could be viewed as being among C.B.'s "unique needs," the DOE's failure to discuss transition services and include a transition plan in the IEP constituted a failure to provide a FAPE. This conclusion was not accompanied by citations to authority and appears to nullify the very recognition by the AHO that the IDEA does not require transition services to be included in the IEP. The DOE had a transition plan separate from (and subsequent to) the IEP. Thus, the absence of an IDEA provision requiring that C.B.'s IEP include a transition plan did not mean C.B.'s transition needs were ignored. Parents have not argued that there is any substantive deficiency in the transition plan of December 2, 2010.

Of course, the IDEA does indeed require the DOE to address the unique needs of a child, and a child may well have transition needs. The Eighth Circuit in Park Hill even stated that a failure to address transition needs might at most constitute a procedural violation of the IDEA. But to the extent § 1414 bars requiring an IEP to include information not expressly required by law, requiring a transition plan in an IEP would be

15

an end-run around that bar.  If that bar and the "unique needs"

provision are to be read as compatible, it appears to this court

that the IDEA must be read as addressing a child's unique needs

in the areas that the IDEA requires an IEP to address.

Otherwise, a particular child's "unique needs" could eliminate

any limit to the scope of an IEP.

The court stresses that its intent is not to diminish

the need for transition services, which may be highly important.

The court is instead concerned about limiting violations of the

IDEA to the terms of the IDEA itself.  Not every denial of

services constitutes a denial of a FAPE, and no statutory

provision requires that a transition plan be included in an IEP.

At the hearing before this court on April 24, 2012,

C.B.'s counsel expressed concern that the DOE had allegedly

declined to discuss C.B.'s need for transition services at the

IEP meeting.  C.B.'s counsel noted that a parent might not

realize that, separate from an IEP meeting, discussion about

transition services could occur.  Even if the IDEA does not

require the DOE to discuss transition services at an IEP meeting,

the court agrees that it could be helpful for the DOE to assure

parents that a separate meeting on transition services will be

scheduled.  C.B. appears to be complaining that the DOE should

have displayed a more cooperative attitude toward Parents.  That,

however, is a matter that in this case did not implicate a denial of a FAPE.

        B.    <u>One-to-One Paraprofessional Services.</u>

        The court agrees with the DOE that the AHO erred in two respects related to the paraprofessional services.

        First, the AHO erred by considering issues that C.B. had not raised in his due process hearing complaint.  Section 1415(f)(3)(B) of the United States Code limits the subject matter of an impartial due process hearing held pursuant to the IDEA to issues raised in a due process complaint:  "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise."  20 U.S.C. § 1415(f)(3)(B).  <u>See also</u> <u>Cnty. of San Diego</u>, 93 F.3d at 1465  ("The scope of the administrative hearing . . . is limited to the 'complaint' raised to obtain the hearing.");  <u>James M.</u>, 2011 WL 1750718, at *12 ("The Ninth Circuit has also held that review in IDEA cases is specifically limited to the issues raised in the administrative complaint." (citing <u>Cnty. of San Diego</u>, 93 F.3d at 1465)).

        C.B.'s due process hearing request complained that, in using the word "daily," a word Parents said was "open to interpretation," the IEP of October 28, 2010, had failed to state the frequency of "one to one professional support."  AR at 4.

The DOE argues that the AHO expanded C.B.'s request beyond the frequency of services and considered whether the IEP team had also refused to allow Parents to discuss both the qualifications of the paraprofessional at the IEP meeting and the substance of C.B.'s paraprofessional services.  The DOE contends that it did not agree to allow Parents to raise those substantive complaints at the administrative hearing.

At the administrative hearing, the AHO received testimony about the frequency of the paraprofessional services, the substance of those services, and the qualifications of the paraprofessional.  C.B. does not argue that, notwithstanding the relaxed evidentiary rules usually applied in administrative proceedings, the DOE should have known from that testimony that the AHO would rely on it in issuing her ruling.  The AHO indeed based her ruling at least in part on that evidence.

For example, responding to questioning from Defendants' counsel, C.B.'s father testified that Parents had asked the IEP team to write the paraprofessional's credentials into the IEP.  Transcript of Proceedings ("Transcript") at 27:11-25.  In her Decision, the AHO stated that "the substance of Student's paraprofessional services--the credentials and/or qualifications of the individual providing these services; the consistency of the 1:1 services provided to Student; and the amount of services

Student would receive during the day--was a major concern for Parents." Decision at 18.

She found that Parents had requested information about the paraprofessional services, such as information pertaining to the frequency of the services, as well as the credentials of the professional, but that this information was not provided to Parents. Id. She ultimately concluded:

> The fact that Student's paraprofessional services would be provided to him "daily" or "throughout the day", combined with the lack of this information provided to Parent[s] in this case, especially in light of Student's previous problems with paraprofessional services and regression at the Home School, is a procedural violation of the IDEA. The October 28, 2010 IEP stated the reasons that Student required paraprofessional services, but did not state, nor was it fully contemplated or discussed at the IEP meeting, what the substance of Student's paraprofessional services would be.

Id. at 19.

The AHO appears to have held that the DOE procedurally violated the IDEA by refusing to provide Parents with information about both the frequency of services and the substance of the services, including the credentials and the qualifications of the paraprofessional. C.B.'s due process complaint, however, raised only the frequency of the paraprofessional services, not the substance of the services. It is unclear whether the AHO would have determined that the DOE had violated the IDEA if her

conclusion had been properly limited to the issue of the frequency of the paraprofessional services.

The court turns now to the separate issue of whether the DOE denied C.B. a FAPE on the frequency ground that was indeed raised by C.B. in his due process hearing complaint. C.B. complained that the IEP of October 28, 2010, "fails to identify the frequency of the service of the one to one professional support." "An individualized educational program is a 'formal, written offer [that] creates a clear record that will do much to eliminate troublesome factual disputes.'" <u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 952 (9th Cir. 2009) (quoting <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1526 (9th Cir. 1994) (modification in original)). Under the IDEA, an IEP must include "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child." 20 U.S.C. § 1414(d)(1)(A)(i)(IV). The IEP must state the "anticipated frequency, location, and duration of those services." <u>Id.</u> § 1414(d)(1)(A)(i)(VII).

Discussing a comment regarding 34 C.F.R. § 300.320(a)(7), which mirrors § 1414(d)(1)(A)(i)(VII), the Federal Register states:

> What is required is that the IEP include
> information about the amount of services that
> will be provided to the child, so that the
> level of the agency's commitment of resources
> will be clear to parents and other IEP Team
> members. The amount of time to be committed

to each of the various services to be
provided must be appropriate to the specific
service, and clearly stated in the IEP in a
manner that can be understood by all involved
in the development and implementation of the
IEP.

Assistance to States for the Education of Children With
Disabilities and Preschool Grants for Children With Disabilities,
Analysis of Comments and Changes, 71 Fed. Reg. 46,667 (Aug. 14,
2006).

C.B. argues that the October 2010 IEP reference to the
"daily" provision of one-to-one paraprofessional services did not
sufficiently state how frequently C.B. was to receive those
services.

In J.L., the parents of a child with learning
disabilities argued that an IEP had not sufficiently specified
the amount of time to be devoted to their child's services when
it provided for 972 minutes per week of specially designed
instruction in reading, writing, mathematics, study skills, and
transitions.  592 F.3d at 943.  The Ninth Circuit held that the
"lump-sum number" was sufficient because the services to be
provided to the student were "access-based" modifications to an
education program.  Id. at 953.  That is, the services depended
on access to books on tape, extended time for exams, and access
to a peer note-taker.  Id.  Because the modifications were
access-based and the child presumably had unlimited access to
each accommodation, the Ninth Circuit said that it was not

reasonable for the school district to predict the amount of time
the student would actually use each accommodation.  Id. at 952.

By contrast, in Bend LaPine School District v. K.H.,
2005 WL 1587241, at *9-10 (D. Or. June 2, 2005), the United
States District Court for the District of Oregon agreed with an
administrative hearings officer that an IEP stating that
specially designed instruction would be provided "throughout the
school day" was too vague and indefinite, and failed to "make
clear to parents or other IEP team members the District's
specific commitment of resources."

The court understands Parents' concern about how often
C.B. would receive one-to-one paraprofessional services.  The
term "daily" could be analogized to the words "throughout the
school day" that were deemed insufficient in Bend LaPine.
Moreover, the focus in J.L. on the access-based nature of the
services that were assigned a lump-sum number of minutes could be
read as suggesting that more specificity is required in other
contexts.  The term "daily" suggests a very broad range.

However, the court need not here decide whether the
term "daily" is sufficient, as C.B. does not show that the use of
the term resulted in the denial of a FAPE.  Although C.B. argues
that a violation of 20 U.S.C. § 1414(d)(1)(A)(i)(VII) is a
substantive violation of the IDEA, in J.L., the Ninth Circuit
suggested that a failure to sufficiently specify the frequency of

22

services was a procedural, not substantive, violation.  592 F.3d
at 953 ("Even if the District did commit a procedural violation
by failing to specify minutes, not every procedural violation
results in the denial of a free appropriate public education.").
"A procedural violation denies a free appropriate public
education if it results in the loss of an educational
opportunity, seriously infringes the parents' opportunity to
participate in the IEP formulation process or causes a
deprivation of educational benefits."  Id. (citing N.B. v.
Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors,
Missoula Cnty., Mont., 541 F.3d 1202, 1208 (9th Cir. 2008)).

     In J.L., the plaintiffs failed to show how the student
was prejudiced by the school district's failure to specify the
amount of services.  Id.  The Ninth Circuit said:

          [Plaintiffs] do not allege that [the child]
          was denied an educational benefit or missed
          an educational opportunity.  Nor do they show
          that the parents' ability to participate in
          the individualized educational program
          formulation process was harmed.  Indeed, the
          record suggests that even though the
          individualized educational program did not
          list the amount of services, everyone
          involved in the individualized educational
          team--including [the child's] parents--knew
          of the amounts.

Id.

     C.B. argues that the DOE's failure to discuss how often
during the day C.B. would receive one-to-one paraprofessional
services infringed on Parents' opportunity to participate in the

IEP process. C.B. contends that, after the IEP meeting on October 28, 2010, C.B.'s father did not know if C.B. was going to have a full-time one-to-one aide. C.B. says that the IEP team's refusal to define the term "daily" at that meeting impeded Parents' participation.

The record does not demonstrate the alleged impediment. C.B.'s father testified at the administrative hearing that he had asked the DOE how long the paraprofessional would spend with C.B. each day, and that the response was: "There would always be somebody there to watch him." Transcript at 28:14-17. C.B.'s father says that this was nonresponsive. However, the record does not indicate that C.B.'s father pressed the DOE for more information about the frequency of the paraprofessional services, or indicated in any lesser manner that he was unsatisfied with the DOE's statement.

At the hearing before this court, C.B. argued that the DOE's response was evasive on its face and that the IEP team should have known that it had not provided C.B.'s father with the information requested. Certainly, a more helpful response would have indicated how many minutes or hours per day the paraprofessional would be spending with C.B., or would have clarified whether the paraprofessional planned to work with C.B. on an as-needed basis. But the court's inquiry here is not as to what would have been the optimum response. Instead, the court is determining whether the response denied C.B. a FAPE.

What C.B. is asking this court to do is to require the DOE to recognize on its own when a parent is not satisfied that the DOE has provided information requested by the parent. C.B.'s argument would be persuasive with respect to a substantive violation of the IDEA. In J.L., however, the Ninth Circuit suggested that this kind of issue was procedural. 592 F.3d at 953. With a procedural violation, assuming one occurred here, this court takes a different approach. C.B. would require the DOE to proactively review everything it says even if the parent does not communicate concern. C.B. would make a mind-reader of the DOE with respect to an alleged procedural violation. The court declines to place upon a school the burden of recognizing a parent's concern about the inadequacy of a school's response to the parent's inquiry when the parent has given no indication of concern.

As the United States District Court for the District of Columbia recognized in Schoenbach v. Dist. of Columbia, parental "input is critical in assuring that disabled children get the services they need." 309 F. Supp. 2d 71, 89 (D.D.C. 2004) (citing Rowley, 458 U.S. at 209 ("[I]ndividualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child.")). "But parents must talk, or complain, when given the chance. Timely input can allow a school district to respond meaningfully to parental requests." Id. See also

Ashland, 587 F.3d at 1184 (holding that the IDEA permitted a district court to deny reimbursement when the parents failed to give the school district notice of their objections to the IEP in issue).  The present record does not show that the DOE's failure to provide more detail on the frequency of paraprofessional services denied C.B. a FAPE under the circumstances of this case.

The court reverses the AHO's Decision with respect to whether the DOE denied C.B. a FAPE.  Because reimbursement under 20 U.S.C. § 1412(a)(10)(C)(ii) is only warranted when there has been a denial of a FAPE, the DOE is not required to reimburse Parents for the costs of C.B.'s attendance at AMS under that provision.  The court need not reach the issue of whether AMS is an appropriate placement for C.B.

VI.    CONCLUSION.

The AHO erred in concluding that C.B. was denied a FAPE.  The court concludes: (1) the DOE was not required under the IDEA to address C.B.'s transition needs or develop a transition plan in the IEP or at the meeting held to develop that IEP; (2) the AHO erred by considering the substance of C.B.'s paraprofessional services when C.B. complained about only the frequency of those services in his impartial due process hearing complaint; (3) any failure of the IEP of October 28, 2010, to sufficiently state the frequency of the one-to-one paraprofessional services was a procedural violation of the IDEA that did not deny C.B. a FAPE.  The AHO's Decision is reversed.

This order does not affect the "stay put" issue previously remanded to the AHO. The parties have agreed that entry of judgment should occur after this court addresses the result of that partial remand.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 1, 2012.



  /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

State of Hawaii, Dep't. of Educ. v. C.B.,; Civil No. 11-00576 SOM/RLP; ORDER REVERSING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER.